IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALYSSA CORMIER, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No.: 1:23-cv-647 |
| SCRIBE MEDIA, LLC, | § § § | |
| Defendant. | § § § | JURY TRIAL DEMANDED |

<u>CLASS ACTION COMPLAINT</u>

Plaintiff Alyssa Cormier, individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendant Scribe Media, LLC ("Scribe" or "Defendant") for violating the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act"), by terminating Plaintiff and Class Members without providing sufficient (or any) advance written notice.

### I.   INTRODUCTION

1. The WARN Act required Scribe to provide Plaintiff and Class Members with at least sixty (60) days advance written notice of a mass layoff or plant closure. Instead, Scribe simply notified Plaintiff and Class Members that their terminations would be effective immediately, and their benefits would cease at midnight that same day.

2. In its May 24, 2023 written notice distributed to the terminated employees, Scribe cites to the "unforeseen business circumstances" and "faltering business" exceptions permitting reduced notice under the WARN Act, which resulted in a "plant closure." However, neither of these exceptions applies to Scribe.

3.      Scribe's failure to provide its employees with any advance written notice has had a devastating economic impact on Plaintiff and Class Members.

4.      As a consequence, Plaintiff and Class Members are entitled under the WARN Act to recover from Scribe their respective compensation and benefits for sixty (60) days.

5.      Specifically, Plaintiff seeks to certify the following class defined as:

> **All former Scribe employees throughout the United States who were terminated as a result of a "mass layoff," as defined by the WARN Act, without 60 days advance written notice, beginning in May 2023.**

6.      Accordingly, Plaintiff, on behalf of herself and on behalf of Class Members, seeks recovery of damages in the amount of sixty (60) days' compensation and benefits by reason of Scribe's violation of her rights under the WARN Act.

## II.     PARTIES

7.      Plaintiff Alyssa Cormier is a citizen of Texas, domiciled in Kyle, Texas. Until her layoff, Plaintiff worked as a Senior Project Manager at Scribe. Plaintiff Cormier is an "aggrieved employee" within the meaning of 29 U.S.C. § 2104(a)(7).

8.      Defendant Scribe Media, LLC is a book publishing company based in Austin, Texas, that has employees working primarily remotely, in Austin and throughout the United States.

9.      Scribe is a limited liability company licensed to do business in the State of Texas. Scribe's principal place of business is located at 507 Calles Street, Suite 107, Austin, Texas 78702. Scribe may be served with process by serving its registered agent, Registered Agent Solutions, Inc., at Corporate Center One, 5301 Southwest Parkway, Austin, Texas 78735, or wherever it may be found.

## II.   JURISDICTION & VENUE

10. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 2104(a)(5), since a substantial part of the events or omissions giving rise to the claim occurred in this District.

## III.   FACTUAL ALLEGATIONS

12. Scribe hired Plaintiff for a Senior Project Manager role on approximately April 4, 2022.

13. On or about May 24, 2023, Scribe notified approximately 90 employees they were being terminated immediately on a conference call with President and Chief Executive Officer JeVon McCormick and Director of People Jes McAvoy.

14. These 90 employees constitute well over 33% or more of Scribe's workforce.

15. Scribe made no offer of severance pay to the terminated employees, and their health insurance benefits end immediately.

16. On the May 24 conference call, McCormick claimed that Scribe was pursuing an Article 9 sale of the company to eliminate debt and bring on new investors.

17. Chief Experience Officer Meghan McCracken said that she expected Scribe to return to normal operation within two weeks after the Article 9 sale occurs.

18. Scribe retained 37 employees to continue operations. The retained employees mostly consist of department heads while the terminated employees performed the day-to-day operations of client and account management.

19. Upon information and belief, one Scribe executive, Brittany Claudius, told the approximately 37 retained Scribe employees that she was not sure when a sale would be approved, but Scribe had enough funds to pay them indefinitely.

20.  Upon information and belief, all the retained employees are making over $90,000 in yearly compensation.

21.  Upon information and belief, these employees continued to be paid at their full rate.

22.  Immediately following the May 24 conference call, Scribe provided written notice to the terminated employees pursuant to the WARN Act. A copy of that notice is attached as Exhibit 1.

23.  The WARN notice claims the terminated employees were affected by a "plant closure," and the plant being closed was located at 507 Calles Street, Suite 107, Austin, Texas 78702. Exhibit 1.

24.  Scribe's WARN notice goes on to say that the "unforeseen business circumstances" and "faltering business" exceptions apply, so the company did not have to give the required 60-day notice or severance pay to the terminated employees. Id.

25.  Scribe's WARN notice also claims the terminations are "expected to be permanent." Id.

26.  However, Scribe's actions before and after terminating the vast majority of its workforce demonstrate that the plant is not closed and the exceptions do not apply.

27.  Scribe has continued to operate its Austin headquarters since May 24, as evidenced by the company's own post on social media in the days following the widespread layoff:



<sup>1</sup>

28. Indeed, McCracken went so far as to explain that Scribe's WARN notice was an overt attempt to skirt the law in an article published the day after the mass layoff:

> McCracken says the letter to employees was legally required because the number of layoffs is so high. Despite its language she says, "Operationally, all of our clients are covered and we are continuing. The employees that are working

<sup>2</sup>

29. Moreover, Scribe's financial difficulties were anything but unforeseen.

30. Upon information and belief, Scribe's last profitable month was January 2021.

---

<sup>1</sup> See Scribe's LinkedIn post at https://www.linkedin.com/feed/update/urn:li:activity:7069765601769971713/; last accessed on June 7, 2023.
<sup>2</sup> See Article "Scribe Media Clarifies Layoffs, Says Assets Will Be Sold," published on May 25, 2023 at https://lunch.publishersmarketplace.com/2023/05/scribe-media-clarifies-layoffs-says-assets-will-be-sold/; last accessed on June 7, 2023.

*Original Class Action Complaint*                                                                 5

31. Further, McCormick's post on Scribe's LinkedIn page demonstrates how he knew about the company's financial difficulties well over a year before the abrupt layoff of the vast majority of Scribe's employees:

> 2. Equally, I apologize for not seeing the other problem in myself sooner. I know my poor decision making started back in March of last year, after my Mother died. I was in the office, but I wasn't present. I was in meetings, but I wasn't present. I saw challenges and concerns that I needed to weigh in on, but I didn't. Quite simply, I was not the CEO the company needed and trusted.

[3]

32. Approximately one month before the mass layoff, Scribe began failing to timely pay its employees. After the second late payroll payment in May 2023, McCormick came clean to Scribe employees that the reason for the delay was a lack of capital and announced that he needed to "pull the cash together" in order to make payroll.

33. Plaintiff and Class Members have suffered devastating economic consequences as a result of their abrupt termination, including falling behind on bills, living paycheck-to-paycheck, and losing health insurance coverage hours after they were notified of their terminations.

34. For Plaintiff and Class Members, the unanticipated, swift cessation of health insurance benefits caused immediate strife. Plaintiffs and Class Members were unable to schedule any last-minute doctor's appointments or refill any prescriptions before their insurance was cut off.

35. Plaintiff Cormier, for example, is six months pregnant and was suddenly without coverage for her routine prenatal doctor's visits. Predictably, among the approximately 90-member Class, there are an array of medical needs, including the needs of small children, that Class Members are struggling to suddenly meet without their health insurance benefits.

---

[3] See Scribe's LinkedIn post at https://www.linkedin.com/feed/update/urn:li:activity:7070433849922482177/; last accessed on June 7, 2023

*Original Class Action Complaint* 6

## IV. CLASS ACTION ALLEGATIONS

36. The above and foregoing paragraphs are incorporated herein as if set forth in full.

37. As a threshold matter, class action treatment of this action is authorized and appropriate under the WARN Act, which explicitly provides that a plaintiff seeking to enforce liabilities under the Act "may sue either for such person or for other persons similarly situated, or both." 29 U.S.C. § 2104 (a)(5).

38. Moreover, Plaintiff and Class Members constitute a Class within the meaning of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

39. **Numerosity.** The Class is so numerous as to render joinder of all members impracticable, in that there are approximately 90 members of the Class.

40. **Typicality.** The claims of Plaintiff are typical of the claims of each member of the Class. Plaintiff's and Class Members' claims all arise from the same event or set of events. All Class Members, including Plaintiff, have the same or similar injury in that Scribe failed to comply with the WARN Act.

41. **Adequacy of Representation.** Plaintiff will fairly and adequately protect and represent the interests of Class Members. Plaintiff and her counsel have the time, ability, and resources to prosecute this action. Plaintiff has retained counsel competent and experienced in complex class actions, especially employment litigation.

42. **Commonality.** Plaintiff's claim raises questions of law and fact common to the questions of law or fact raised by the claims of each member of the Class. Plaintiff's claims arise from the same event or set of events that gives rise to the claims of Class Members. The questions of law and fact common to Plaintiff and the Class predominate over questions affecting only individual Class Members, and include, but are not limited to, the following:

    a. That all Class Members enjoyed the protection of the WARN Act;

    b. That Scribe's termination of approximately 90 employees on or about May 24, 2023 constituted a "mass layoff" under the WARN Act;

    c. That Scribe failed to provide the notices required by the WARN Act;

    d. That Scribe cannot avail itself of any of the provisions of the WARN Act which permit lesser periods of notice;

    e. That Scribe has failed to pay Plaintiff and Class Members wages and to provide other employee benefits for a 60-day period following their respective terminations;

    f. The appropriate formulae to measure damages under the WARN Act; and

    g. The appropriate definitions and formulae to measure payments to offset damages under the WARN Act.

43. A class action under Rule 23 is appropriate for the above reasons and since the prosecution of separate actions by individual members of the class would create a risk of both inconsistent or varying adjudications based on a single set of facts, as well as adjudications of individual Class Members' claims that would, as a practical matter, be dispositive of the interests of other Class Members.

44. **Fed. R. Civ. P. 23(b)(3) Factors.** Common issues of law and fact predominate in this matter and the class action method is superior to other methods available for handling this litigation. Indeed, the WARN Act has been described in judicial opinions as "contemplat[ing] enforcement by class action."

45. **Common issues predominate.** As set forth above, common issues of law and fact predominate over individualized issues because Scribe has violated the WARN Act by laying off the vast majority of its employees with no notice. Virtually all issues of liability will be common

to the Class. Furthermore, to the extent Class Members' damages are individualized, the analysis of each Class Member's measure of damages is similar or identical and is capable of being resolved by application of a common damages formula and/or using a common set of data within the possession of Scribe.

46. **Superiority.** Additionally, a class action is superior to other available methods for fair and efficient adjudication of the controversy, and in fact, is a statutory right granted in the WARN Act. The damages sought by each Class Member may be so relatively small, and the expense and burden of separate litigation so high, that individual prosecution would prove burdensome and unduly expensive. Even if Class Members themselves could afford such individual litigation, such individualized litigation would present an unnecessary burden on the courts. This is especially true as there is no other litigation commenced concerning these issues and it is desirable and virtually inevitable, given the locus of Defendant's acts, to concentrate this litigation in this forum.

47. **Manageability.** The trial and litigation of Plaintiff's claims are manageable. Class Members and damages data may be identified through Defendant's own records. Individualized litigation presents a potential for inconsistent or contradictory judgments; increases the delay and expense to all parties and to the court system; and is avoidable when Defendant's conduct was systematic and uniform. The class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

48. **Notice to the Class.** Notice to the Class may be made by United States mail, electronic means, or other appropriate means. Scribe will have data regarding contact information for each Class Member.

## V.  CAUSE OF ACTION – VIOLATIONS OF THE WARN ACT

49. Plaintiff realleges each of the allegations in all prior paragraphs as if fully set forth herein.

50. At all times relevant to this action, Scribe was an "employer" as defined in the WARN Act.

51. Plaintiff and Class Members are "affected employees" and/or "aggrieved employees" who suffered an "employment loss" as defined in the WARN Act.

52. Plaintiff and Class Members' employment loss was the result of Scribe's "mass layoff" as that term is defined in the WARN Act.

53. Scribe willfully violated the WARN Act by failing to provide the required 60-day advance written notice to Plaintiff and Class Members of their termination.

54. Scribe is thus liable for up to sixty (60) days back pay, including other benefits, to each "affected employee" or "aggrieved employee."

55. Section 2102 of the WARN Act permits a reduced notification period to employers under certain circumstances. 29 U.S.C. § 2102(b)(1)-(2). None of the circumstances permitted by Section 2102 apply to Scribe.

## VI.  JURY DEMAND

56. Plaintiff requests a trial by jury.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and Class Members, respectfully requests that judgment be entered in her favor and against Scribe, awarding Plaintiff and Class Members the following relief:

a) certifying this action as a class action pursuant to Fed. R. Civ. P. 23;

b) designating Plaintiff as Class Representative and designating Plaintiff's counsel as class counsel;

c)  declaring Defendant's conduct in violation of the WARN Act;

d)  awarding Plaintiff and Class Members compensatory damages in an amount equal to at least the amounts provided by the WARN Act, 29 U.S.C. § 2104(a);

e)  awarding Plaintiff and Class Members their reasonable attorneys' fees and costs, as allowed by the WARN Act, 29 U.S.C. § 2104(a)(6);

f)  awarding pre- and post-judgment interest, to the extent available at law; and

g)  awarding such other relief as the Court deems just and proper.

Dated: June 7, 2023

Respectfully submitted,

By:   /s/ Caitlin Boehne
Caitlin Boehne
Texas Bar No. 24075815
cboehne@kaplanlawatx.com
Ryan Estes
Texas Bar No. 24120586
restes@kaplanlawatx.com
Austin Kaplan
State Bar No. 24072176
akaplan@kaplanlawatx.com

KAPLAN LAW FIRM
3901 S. Lamar Blvd., # 260
Austin, Texas 78704
Tel.: (512) 814-7348
Fax: (512) 692-2788

*Attorneys for Plaintiff and Putative Class Members*