**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ALYSSA CORMIER,** | § | |
| **CLAIRE BRUDNER,** | § | |
| **MARIANNA ACOSTA,** | § | |
| **and ESTY PITTMAN,** | § | |
|     **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:23-cv-647-RP** |
| | § | |
| **SCRIBE MEDIA, LLC,** | § | |
| **BOND FINANCIAL TECHNOLOGIES** | § | **JURY TRIAL DEMANDED** |
| **HOLDINGS, LLC,** | § | |
| **ENDURING VENTURES, INC.,** | § | |
| **ENDURING CONSULTING GROUP** | § | |
| **LLC, and** | § | |
| **ENDURING VENTURES TY** | § | |
| **PARTNERSHIP LLC,** | § | |
|     **Defendants.** | § | |

### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**Caitlin Boehne**
Texas Bar No. 24075815
cboehne@kaplanlawatx.com
**Ryan O. Estes**
Texas Bar No. 24120586
restes@kaplanlawatx.com
**Austin Kaplan**
State Bar No. 24072176
akaplan@kaplanlawatx.com
**J. Bryan Wood**
*Admitted Pro Hace Vice*
bwood@kaplanlawatx.com

KAPLAN LAW FIRM
2901 Bee Cave Rd., Suite G
Austin, Texas 78746
Tel.: (512) 814-7348

*Attorneys for Plaintiffs and Putative Class Members*

## I. PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 23 and Appendix A of the Local Rules, Plaintiffs Alyssa Cormier, Claire Brudner, Marianna Acosta, and Esty Pittman ("Plaintiffs") move to certify a class of other former employees who were terminated without notice from Defendant Scribe Media, LLC ("Scribe"). Scribe, a book publishing company, terminated Plaintiffs and approximately 90 other employees from its Austin, Texas facility without any prior notice, in violation of the Worker Adjustment and Retraining Notification ("WARN"), 29 U.S.C. § 2010, *et seq*. Plaintiffs bring this motion pursuant to 29 U.S.C. § 2104(5) and Fed. Civ. P. 23 to certify a class of "[a]ll former Scribe employees throughout the United States who were terminated as a result of a 'mass layoff,' as defined by the WARN Act, without 60 days advance written notice, beginning in May 2023."

## II. BACKGROUND

Immediately prior to May 24, 2023, the Plaintiffs and approximately 86 other similarly situated persons were employees of Scribe Media, LLC ("Scribe"), at the Austin, Texas facility. On May 24, 2023, Plaintiffs and other similarly situated former employees of Scribe were terminated as part of, or as a result of, a mass layoff, as defined by WARN Act, 29 U.S.C. § 2101(a)(2). The mass layoff was carried out without giving 60 days advance notice to the employees as generally required by the WARN Act. None of the Plaintiffs or the other putative former employees who were terminated as a result of this mass layoff ("the class") were paid wages or provided benefits for 60 days following their respective terminations.

On June 7, 2023, Plaintiff Cormier filed her Class Action Complaint against Scribe. Dkt. 1. In June 2023, Enduring Ventures, Inc., ("EV"), Enduring Consulting Group LLC ("Consulting") and/or Enduring Ventures TY Partnership LLC ("Partnership") acquired Scribe. Soon after, EV,

Consulting, and/or Partnership created subsidiary Bond Financial Technologies Holdings, LLC ("Bond") (together, the "EV Defendants" or "Successor Defendants"), to control and operate "new Scribe" going forward.

On July 7, 2023, Plaintiff filed her First Amended Class Action Complaint to add Plaintiffs Brudner, Acosta, and Pittman as Plaintiffs. Dkt. 7. On October 16, 2023, Plaintiffs filed their Second Amended Class Action Complaint to add the Successor Defendants. Dkt. 13.

On October 24, 2023, Scribe filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), thereby triggering the automatic stay provisions of § 362 of the Title 11, Bankruptcy Code. The Successor Defendants are not debtors in that action, and these proceedings continued against them.

On December 21, 2023, the Plaintiffs filed their Third Amended Class Complaint (Dkt. 23) against Defendants, in response to Defendants EV, Consulting, and Partnership's Original Motion to Dismiss. Dkt. 19.

On January 17, 2024, Defendants EV, Consulting, and Partnership filed a Renewed Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) ("Renewed Motion to Dismiss"). Dkt. 27. On January 31, 2024, Plaintiffs filed a response to the Renewed Motion to Dismiss as well as a motion requesting this Court to authorize jurisdictional discovery into the EV Defendants. Dkt. 29. All these motions are currently pending resolution by this Court.

On February 12, 2024, upon motion by the Plaintiffs, the court in the Scribe bankruptcy case entered an order modifying the automatic stay to allow Plaintiffs to liquidate their claims in this lawsuit, including entry of a final judgment determining the interests of the parties.[1] On February 14, 2024, Plaintiffs filed their *Status Report and Notice of Modification of Stay as to*

---

[1] *In re Scribe Media, LLC*, Case No. 1:23-bk-10868-smr (W.D. Tex.) (Dkt. 26).

*Scribe Media, LLC*, notifying this Court as to the Bankruptcy Court's February 12, 2024 order. Dkt. 33.

## III.    STATEMENT OF FACTS

On May 24, 2023, the day of the mass layoff, Scribe terminated approximately 90 employees, who were at least 33 percent of Defendants' workforce. Plfs Ex. A, Declaration of A. Cormier ¶¶ 3, 4. Plaintiffs and all putative class members were terminated as a result of a mass layoff, and without 60 days advance written notice. *Id*. at ¶ 3; Plfs Ex. B, Declaration of C. Brudner, Ex. C, Declaration of M. Acosta, and Ex. D, Declaration of E. Pittman (collectively, "Plaintiffs' Declarations") at ¶ 3. Scribe failed to pay Plaintiffs and putative class members any wages as a result of this mass layoff. Plfs Ex. A at ¶ 5. On the day of their termination, Scribe issued a WARN notice to the laid off employees that the "unforeseen business circumstances" and "faltering business" exceptions to the WARN Act applied and led to the "plant closure" of Scribe's Austin headquarters. *Id*. at ¶ 6, Ex. 1-A. Scribe used these exceptions to not pay Plaintiffs and the putative class members what the WARN Act required.

Despite the content of the WARN notice, Scribe has continued to operate its Austin headquarters since the May 24 layoff. *Id*. at ¶ 7. Public LinkedIn posts from Scribe's former Chief Executive Officer JeVon McCormick described how Scribe continued to keep operating. *Id*. at ¶ 11, Ex. 1-B. Further, Scribe's financial difficulties were foreseeable. McCormick publicly acknowledged Scribe's financial difficulties began in March 2022. *Id*. Additionally, it was common knowledge throughout Scribe that its last profitable month was in January 2021. *Id*. at ¶ 9.

In the immediate aftermath of the mass layoff, Scribe was actively looking for investors to take over the company. *Id*. at ¶ 8. The EV Defendants acquired Scribe in summer 2023. *Id*. at ¶

12. Since the EV Defendants have taken over Scribe, "new Scribe" has continued to operate with the same name, brand, business model, customer base, employees, and equipment as "old Scribe." *Id*. at ¶¶ 13-16.

## IV.   ARGUMENT

### A.  Overview of the WARN Act

The WARN Act bars employers with 100 or more employees from ordering a "plant closing" or a "mass layoff," each as defined in the WARN Act, unless at least 60 days' advance written notice containing specified information is provided to each employee who will be terminated as part of, or as a reasonably foreseeable result of, a mass layoff or plant closure. 29 U.S.C. §§ 2101(a)(1), 2102(a)(1). A "mass layoff" is a reduction in force that is not the result of a plant closing and which results in an employment loss at a single site of employment during any 30-day period for at least 33 percent of the employees at a single site of employment, and at least 50 employees, excluding part-time employees. 29 U.S.C. § 2101(a)(3).

Failure to give the required notice renders the employer liable to each affected employee for 60 days' pay and benefits. If the employer gives less than 60 days' notice, the employer is liable for pay and benefits for the same number of days that notice was not given. 29 U.S.C. § 2104. The notice must be given by a method that is reasonably designed to ensure fulfillment of the employer's obligation to give notice to each affected employee. 29 U.S.C. § 2107(b); 20 C.F.R. § 639.8.

The WARN Act contains three exceptions, two of which have been invoked by Scribe. The first is the "faltering company" exception to the WARN Act, which "applies to plant closings but **not to mass layoffs** and should be narrowly construed." 29 C.F.R. § 639.9(a).  Regulations specify this exception does not apply when production or work has not been effectively ceased in a single

site of employment. *See* 20 C.F.R. § 639.3(b). An employer who possesses sufficient resources to keep the facilities open may not rely on the "faltering company" defense. 20 C.F.R. § 639.9(a)(4).

Here, Scribe maintained a sufficient portion of its workforce to continue operations out of its Austin headquarters after the mass layoff in May 2023, and it therefore cannot invoke this exception. *See* Plfs Ex. A at ¶¶ 7, 13.

Moreover, an employer seeking to rely on the so-called "faltering company" defense must give the employee as much notice as is reasonably practicable with an explanation as to why the full 60 days' notice was not given. 29 U.S.C. § 2102(b)(3). Here, Scribe gave Plaintiffs and putative class members no notice whatsoever, and therefore did not meet the requirements of the exception.

The second exception under the WARN Act applies when the mass layoff or plant closing is caused by "unforeseeable business circumstances," i.e., a sudden, dramatic, and unexpected action or condition outside the employer's control.  In such circumstances, the employer may give less than 60 days' notice, but, again, must give as much notice as is reasonably practicable and provide a statement explaining the reason why less than 60 days' notice was given. 20 U.S.C. § 2101(b)(2)(A). This exception only applies when the unforeseen circumstances is "caused by some sudden and unexpected action or condition outside the employer's control." *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1281 (5th Cir. 1994).

The mass layoff here was a foreseeable circumstance, and the exception therefore does not apply. Here, the company's last profitable month was approximately two and a half years before the mass layoff, and Scribe's CEO publicly acknowledged that the company's financial difficulties began in March 2022. *See* Plfs Ex. A, Exhibit 1-A. Approximately a month before the

layoff, Scribe stopped making timely payroll payments because of an inability to "pull the cash together." in order to make payroll. *See Id*. at ¶ 10.

### B.  Standard for Class Certification

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 229 (5th Cir. 2009) (citation omitted). Plaintiffs meet the Rule's requirements.

The party seeking class certification bears the burden of proving that Rule 23's requirements are satisfied. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). When making this determination, the district court "must accept the substantive allegations of the complaint as true." *Lehocky v. Tidel Techs., Inc.,* 220 F.R.D. 491, 498 (S.D. Tex. 2004).

All classes must satisfy the prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Once the court concludes that these threshold requirements have been met, "it must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b)." *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l,* 695 F.3d 330, 345 (5th Cir. 2012). Here, Plaintiffs move under subsection (b)(3). As outlined below, Plaintiffs satisfy each of the subsection (a) threshold requirements, as well as Rule 23(b)(3)'s requirements of predominance and superiority.

### C.  Plaintiffs Satisfy the Requirements of Rule 23(a)

Courts certify classes in WARN Acts cases. *See, e.g., Easom v. U.S. Well Services, LLC*, No. CV H-20-2995, 2023 WL 6279359, at *9 (S.D. Tex. Sept. 26, 2023) (the common questions of the appropriateness of notice and the employer's affirmative defenses predominate, and the predominance of these issues establishes the superiority of adjudicating the claim as a class action);

*see also Gomez v. American Garment Finishers Corp*., 200 F.R.D. 579, 582 (W.D. Tex. 2000) (common question of whether absence of notice satisfied statutory requirements warranted class certification).  The Court should do so here.

### 1. The Class Is So Numerous That Joinder of All Members Would Be Impracticable

Federal Rule of Procedure 23(a)(1) requires that the class sought to be certified be "so numerous that joinder of all members is impracticable." No specific number is required to maintain a class action, as there is "no definite standard" as to what size class satisfies the numerosity requirement. *In re TWL Corp.*, 712 F. 3d 886, 894 (5th Cir. 2013). An estimated number of potential class members is sufficient to satisfy the requirement. *See San Antonio Hisp. Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 442 (W.D. Tex. 1999) (a plaintiff is not required to show the exact number of members for the proposed class, nor do the members need to be identified individually). Other factors relevant to the numerosity element include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981); *see also TWL Corp*, 712 at 894 (noting courts also consider "judicial economy arising from the avoidance of a multiplicity of actions" as a factor relevant to the numerosity element). The Fifth Circuit has suggested that classes with as few as twenty-five or thirty members can be certified. *See Zeidman*, 651 F.2d at 1038.

In this case, Plaintiffs estimate that the proposed class includes approximately 90 former Scribe employees. Plfs Ex. A at ¶ 3; Plaintiffs' Declarations at ¶ 3. Plaintiff Cormier witnessed approximately ninety total employees on the virtual conference call where Scribe executives notified them of their termination on May 24, 2023. Plfs Ex. A at ¶ 3. Additionally, Texas

Workforce Commission's WARN notice database stated that 90 employees were affected by the layoff. *Id*.

Many WARN Act cases with approximately the same or significantly fewer members satisfied Rule 23(a)(1)'s requirements. *See Stanley v. St. Croix Basic Servs., Inc.*, 2008 WL 4861448, at *6 (D.V.I. Nov. 3, 2008) (proposed class of 67 individuals meets first prong of Rule 23(a)); *Quintero v. Mulberry Thai Silks, Inc.*, 2008 WL 4666395, at *3 (N.D. Cal. Oct. 22, 2008) (purported class including approximately 60 employees satisfies numerosity requirement); *Hayden v. Freightcar Am., Inc.*, 2008 WL 376762, at *10 (W.D. Pa. Jan 11, 2008) (subclasses of approximately 53 and 100 satisfy numerosity requirement of Rule 23(a)); *Smith v. Ajax Magnethermic Corp.*, 2007 WL 3355080, *2 (N.D. Ohio Nov. 7, 2007) (recognizing class size of 55 as small, but noting joinder still impracticable due to relatively small damages suffered by each class member).

For the reasons stated above, Plaintiffs satisfy the numerosity requirement, and therefore class certification is appropriate.

### 2.   The Class Members Share Common Questions of Law and Fact

Federal Rule of Civil Procedure 23(a)(2) requires that "questions of law or fact be common to the class." The threshold for commonality is not high. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). The commonality test is met when there is "at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Ligtbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).

In *Gomez v. American Garment Finishers Corp.*, this Court, in granting class certification, found that a proposed class of employees allegedly laid off without the 60-day advance notice required by the WARN Act satisfied the commonality requirement, since plaintiffs and proposed

class were united by the common legal question of whether the employer complied with the statutory notice requirements of WARN. 200 F.R.D. 579, 582 (W.D. Tex. 2000).

In the present case, virtually all of the issues are common to the class members, all of whom were terminated as part of a mass layoff that occurred on May 24, 2023. The factual and legal questions stem from a common core of facts regarding the Plaintiffs' and other proposed class members and Defendants' actions here as follows: (a) whether the Plaintiffs and the other proposed class members were protected by the WARN Act; (b) whether the Defendant ordered the termination  on May 24, 2023 as part of a "mass layoff"; (c) whether the Plaintiffs and the other proposed class members were "affected employees"; (d) whether the Plaintiffs and the members of the proposed class were terminated without at least 60 days' prior written notice as required by the WARN Act; (e) whether Defendants can avail itself of any of the provisions of the WARN Act which permit lesser periods of notice; (f) whether Defendants have failed to pay Plaintiffs and proposed class members wages and to provide their employee benefits for a 60-day period following their respective terminations; and (g) the appropriate formulae to measure damages under the WARN Act.

Additionally, Plaintiffs seek to hold the EV Defendants accountable as successor entities for Scribe's violations of the WARN Act. Only common questions flow from that inquiry as well, such as (h) whether the EV Defendants were on notice of Scribe's violations of the WARN Act when they assumed control of Scribe, (i) whether there is a continuity of operations between the "old Scribe" and the "new Scribe," and (j) whether Scribe is able to pay for its violations of the WARN Act. *See, e.g., Washington v. Patterson-UTI Energy, Inc.*, No. 5-16-CV-130-RP, 2016 WL 3081060, at *4 (W.D. Tex. May 31, 2016). None of those questions turn on the individual circumstances or claims of the class members, and the Court will be able to determine whether

there is a WARN Act violation and, if so, whether the EV Defendants are liable as successor entities "in one stroke." *Dukes*, 564 U.S. at 350.

The only factual variation will be the amount of damages to each individual class member, as damages are primarily calculated based on class members' last rate of pay for Defendants and damages resulting from lost benefits in the 60 days after their termination. 29 U.S.C. § 2104. This variation, however, is not sufficient to defeat the commonality of the Plaintiffs and the proposed class. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (allowing variation in damages unless "individual damages calculations . . . overwhelm questions common to the class"); *see also Gomez*, 200 F.R.D. at 584 (certifying class action despite potentiality of "highly individual inquiries" involved in damages calculation); *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 797 (8th Cir. 2014), aff'd, *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036 (2016) (finding no abuse of discretion where class members worked at the same plant, used similar equipment and were subject to the same pay policy, even though there were some variation in class members' damages); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260-61 (11th Cir. 2003) (affirming class certification for breach of contract claim where the contracts were materially similar and defendant had acted the same with respect to the entire class); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 607 (E.D. La. 2006) (whether and how much the defendant oil company damaged the plaintiffs' property did not preclude class treatment of negligence claim).

For the reasons stated above, Plaintiffs have satisfied the commonality requirement, and therefore class certification is appropriate.

### 3.   Plaintiffs' Claims Are Typical of the Class

Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the class." Like commonality, the typicality requirement is not demanding. *Gomez*, 200 F.R.D. at 582. In *Gomez*, this Court added that

> It is well-settled that the class representatives must possess the same interest and suffer the same injury as the class members. *See East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977). "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).

*Id.*

As discussed further in Section IV.C.2, *supra*, and Section IV.D.1, *infra*, all Plaintiffs and proposed class members share the exact same claims and are pursuing the same exact remedies. Plaintiffs and class members enjoyed the protection of the WARN Act, Defendants violated the WARN Act, and now Plaintiffs and class members are entitled to damages as provided by the WARN Act. Differences in rates of pay and damages do not make Plaintiffs' and class members' claims atypical. *See Rangel*, 2014 WL 12542900, at *2 ("The only perceived difference between the Plaintiff's claims and the other class members' claims is the final amount of back pay that each employee would be entitled to receive, a predicament that exists in every WARN Act case and which does not preclude class certification.")

For the reasons stated above, Plaintiffs have satisfied the typicality requirement, and therefore class certification is appropriate.

### 4. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class

#### a) Plaintiffs Will Adequately Represent the Class

Federal Rule of Civil Procedure 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement looks at (1) "the willingness and ability of the representative to take an active role in and control the litigation and

to protect the interests of absentees," and (2) "the zeal and competence of the representative's counsel." *Kirkpatrick v. HomeAway.com Inc.*, No. 1:16-CV-733-LY, 2020 WL 7680558, at *5 (W.D. Tex. Apr. 21, 2020).

The court must find that the class representatives are free from conflicts of interest with the class they seek to represent. *Amchem v. Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Plaintiffs must additionally show that they "possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005). This is not an "exacting" standard and can be satisfied by showing the representatives "have a general understanding of their position as plaintiffs with respect to the cause of action and the alleged wrongdoing perpetrated against them by the defendants." *Steward v. Janek*, 315 F.R.D. 472, 490 (W.D. Tex. 2016) (citations omitted). Additionally, a court must find that class counsel is qualified. *N. Am. Acceptance Corp. v. Arnall, Golden & Gregory*, 593 F.2d 642, 644 (5th Cir. 1979).

Plaintiffs have no interests that would conflict with, or be antagonistic to, the interests of the class as a whole. Plfs Ex. A at ¶ 24; Plaintiffs' Declarations at ¶ 6; Plfs Ex. E, Declaration of Austin Kaplan at ¶ 19. Like the putative class they seek to represent, Scribe terminated them as part of the mass layoff which occurred on May 24, 2024. Plfs Ex. A at ¶ 3; Plaintiffs' Declarations at ¶ 3. The harm inflicted upon them, and the class as a whole can be redressed only through the same type of relief. In Plaintiffs' counsel's estimation, the claims of the class will not require subclasses presently or in the future. Plfs Ex. E at ¶ 22. Thus, the interests of the class representatives are co-extensive with those of each of the other class members.

Additionally, Plaintiffs have sought out counsel and fully agreed to participate in this litigation, knowing that it was to be brought as a class action to enforce the rights of absent class

members. Plfs Ex. A at ¶¶ 22, 23; Plaintiffs' Declarations at ¶¶ 4, 5; Plfs Ex. E at ¶ 20. Plaintiffs' counsel has discussed with and thoroughly explained to Plaintiffs the nature of a class action and the potential advantages and disadvantages of proceeding in a class action, rather than individually. Plfs Ex. A at ¶ 22; Plaintiffs' Declarations at ¶ 4; Plfs Ex. E at ¶ 20.

Plaintiffs' counsel requests that Plaintiffs be appointed class representatives. Plaintiffs' counsel represents that Plaintiffs have been diligent and active in pursuing the class claim and have worked closely with counsel in initiating and prosecuting the action. Plfs Ex. E at ¶ 18. Plaintiffs have no conflict of interest with other proposed class members, and they have and will fairly and adequately represent the interests of the class.

Finally, as discussed below, Plaintiffs have also fulfilled the final aspect of the adequacy inquiry by hiring counsel that is "qualified, experienced, and generally able to conduct the proposed litigation." *N. Am. Acceptance Corp.*, 593 F.2d at 644.

For these reasons, Plaintiffs' counsel asks that Plaintiffs Alyssa Cormier, Claire Brudner, Marianna Acosta, and Esty Pittman be appointed class representatives.

### b) Proposed Class Counsel Will Adequately Represent the Class

Plaintiffs and their counsel have, and will continue to, vigorously and actively prosecute this action on behalf of all class members. Plaintiffs' counsel investigated the facts, researched the applicable laws, and served a complaint. Upon the subsequent development of the facts, Plaintiffs' counsel has served three amended complaints. Dkts. 7, 13, and 23. Plaintiffs' counsel has responded to the EV Defendants' motion to dismiss, and has, in the alternative, requested leave to conduct jurisdictional discovery in response to said motion to dismiss. Dkts. 28 and 29. Additionally, Plaintiffs' counsel has successfully motioned the Scribe Bankruptcy Court for a modification of the automatic stay that was placed over this proceeding, so that Plaintiffs may

liquidate their claims in the lawsuit, including entry of a final judgment determining the interests of the parties. Plaintiffs have now moved for class certification and the appointment of class counsel.

Putative class counsel is fully competent to prosecute this litigation as a class action. Kaplan Law Firm, PLLC has experience litigating a variety of types of complex class actions, especially in the employment context. Plfs Ex. E ¶¶ 3, 5, 8-11, 13, 14. Attorney Boehne and Attorney Wood have served as class counsel, and Attorney Kaplan and Attorney Estes have represented putative classes. *Id*. at ¶¶ 5, 9, 11, 14. Attorneys Boehne, Estes, and Kaplan are presently counsel of record for three putative class and/or collective actions in federal court. *Id*. at ¶¶ 5, 11, 14. For the reasons stated above, Plaintiffs have satisfied the adequacy requirement, and therefore class certification is appropriate.

### D. Plaintiffs Satisfy Rule 23(b)(3)

To maintain a class action, Plaintiffs are required to establish that this action falls within one of the categories identified in Fed. R. Civ. P. 23(b). Plaintiffs' proposed class action should be certified under Fed. R. Civ. P. 23(b)(3), which provides that an action may be maintained as a class action where:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). The Rule goes on to list four factors that a court should consider in determining whether the predominance and superiority requirements are met:

> (A) The class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* The purpose of Rule 23(b)(3) is to identify those actions in which certification of a class "would achieve economies of time, effort and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citation omitted).

### 1. Common Questions Predominate

Common issues predominate over any individual inquiries necessary to establish Defendant Scribe's liability under the WARN Act and the EV Defendants' liability as successor(s) of Scribe. The predominance inquiry requires courts "to consider how a trial on the merits would be conducted if a class were certified." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003). The inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. To predominate, common issues must constitute a significant part of the individual cases. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999). In evaluating whether common issues predominate, the Court should consider whether common questions are "more prevalent or important than the non-common" questions, and whether the "proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Tyson Foods*, 136 S. Ct. at 1045.

Not all issues—or even all important issues—must be common for common issues to predominate:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Id*. (internal quotations and citation omitted). Here, common issues predominate because the factual and legal issues that will drive the outcome of the class members' WARN Act claims will be decided under identical legal standards and can be resolved using common evidence.

In *Gomez, supra,* this Court recognized that in a WARN Action similar to the present one the requirement of Rule 23(b)(3) that common issues of law and fact predominated was satisfied:

> As discussed above, establishing WARN liability turns on straightforward issues regarding whether Defendant is an "employer" under WARN; whether a "mass layoff" or "plant closing" took place on or about February 27, 1999; and, if so, whether Defendant gave the proper notice required by WARN. *See* § 2101(a)(1). The employer may also establish defenses common to the entire class. *See, e.g.* § 2104(a)(4) (establishing defense of employer's "good faith" and "reasonable grounds" to believe contested action not contrary to WARN); § 2102(2)(A) (shortening notification period where employer actively seeking capital to avoid layoffs).

200 F.R.D. at 584.

In the present case, all Plaintiffs and class members will use the same evidence to prove Defendants' liability (or successor liability), and the same questions of law apply to each Plaintiff, class member, and Defendant. Plaintiffs will need to show that Defendant Scribe was covered by WARN, that Plaintiffs were covered by WARN, that Defendant Scribe violated WARN when Plaintiffs were terminated, that Defendant Scribe does not have an ability to pay for its WARN Act violations, that the EV Defendants were on notice of Defendant Scribe's WARN Act violations, and that there is a substantial continuity in operations between Defendant Scribe and the EV Defendants' "new Scribe." The common evidence Plaintiffs will need to prove up these issues is largely financial documents of Defendant Scribe (who is currently in bankruptcy proceedings), deposition testimony from corporate representatives of the EV Defendants, communications between Scribe and the EV Defendants, and records of Scribe and the EV Defendants' operations (such as employees, equipment, and intellectual property).

Individual questions of fact will only be presented as to the amount of damages that each Plaintiff is owed, but the fact remains that each Plaintiff was injured by Defendants in the same way, and in violation of the same law. *See Gomez*, 200 F.R.D. at 584 (finding predominance satisfied despite potentiality of "highly individual inquiries" involved in damages calculation).

Before the Court would reach any the potentially individualized damages issues for any Plaintiff or putative class member, it must decide the predominant issues of liability common to each class member (including those relating to the statutory exceptions to notice under the WARN Act Scribe may seek to invoke).

Moreover, there is no dispute over a threshold issue central to this litigation—that Scribe gave Plaintiffs and class members notice of their termination on the same day as their terminations. *Compare* Plaintiffs' Original Complaint, Dkt. 1 ¶ 1 *with* Defendant Scribe's Answer, Dkt. 5 ¶ 1. Therefore, common questions heavily predominate over individual inquiries and the predominance test has been satisfied.

### 2.   Class Treatment Is Superior to Individual Litigation

Congress clearly anticipated that class actions may be the superior method of prosecuting WARN violations, as the Act specifically includes class action language in its grant of a private cause of action:

> A person seeking to enforce such liability, including a representative of employees or a unit of local government aggrieved under paragraph (1) or (3) **may sue either for such person or for other persons similarly situated, or both,** in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business.

29 U.S.C. § 2104(a)(5) (emphasis added). The inherent nature of WARN claims, involving plant closings or mass layoffs, are ideal for class adjudication. By their nature, WARN Act claims involve a relatively large group of litigants with relatively small individual claims, each harmed in the same way by the same employer.

The alternative to adjudicating these claims as a class is to have each of the dozens of potential class members bring suits individually. This would result in a multitude of lawsuits, with small amounts in controversy, each presenting identical proofs to the courts, or alternatively, many class members would abandon their legitimate claims against Defendants due to frustration or

inability to obtain counsel on their small claims. Therefore, certifying the proposed class conserves judicial resources, and grants court access to dozens many people who otherwise might not be able to obtain it.

Further, a class action under Rule 23(b)(3) is appropriate since the prosecution of separate actions by individual members of the class would create a risk of both inconsistent or varying adjudications based on a single set of facts, as well as adjudications of individual class members' claims that would, as a practical matter, be dispositive of the interests of other class members.

Finally, there have been no settlement discussions in this case and, in Plaintiffs' counsel's estimation, the likelihood of settlement with Plaintiffs on an individual basis is low. Plfs Ex. E at ¶¶ 23-24.

For the reasons stated above, a class action is the superior method of adjudicating this case, and the class should be certified.

### 3.   The Four "Pertinent" Factors Indicate That Class Certification Is Proper

The four factors mentioned in Rule 23(b)(3) also support certification of the proposed class. As to the first and second factors, after a diligent search, class counsel is aware of no other litigation concerning the present controversy, or of any absent class members' interest in pursuing an individual claim. *Id*. at ¶ 21. Therefore, there are no separate actions to be controlled by the members of the putative class. If any member of the proposed class wishes to pursue a separate action, he or she may do so by opting out of this class.

As to the third factor, this District Court is the most desirable forum for concentrating this litigation. The actions giving rise to this litigation occurred in this district and most of the Plaintiffs reside in this district. Plfs Ex. A at ¶¶ 1, 2; Plfs Ex. B at ¶ 1; Plfs Ex. C at ¶ 1.

Finally, there are no likely difficulties in the management of this case as a class action. Plfs Ex. E at ¶¶ 16, 17, 25. The class is not so large as to create managerial difficulties for the Court or counsel. Additionally, the case raises no special concerns that would indicate practical or administrative difficulties. To the contrary, this is an ideal case for class certification, as there is a well-defined proposed class and a defendant whose records will identify the class members' identities.

For the reasons stated above, the four pertinent factors mentioned in Rule 23(b)(3) support certification of the proposed class. Therefore, the class should be certified.

### E.  The Manner of Service of Notice Is Proper.

Plaintiffs submit that service notice of this class action by First Class mail, postage prepaid, by SMS/text, and by electronic mail to each member of the proposed class at the member's last known contact information as shown in the Defendants' records, and to permit at least 30 days from the date of the mailing for each putative class member to object to class certification or to opt-out of the class, is "the best notice that is practicable under the circumstances" as required by Federal Rule of Civil Procedure 23(c)(2)(B).

"Notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Individual mailings to potential class members' last known address will ordinarily satisfy the notice delivery requirement. *See, e.g., Minter v. Wells Fargo Bank, N.A.*, 283 F.R.D. 268, 275 (D. Md. 2012); *Parker v. Time Warner Ent. Co., L.P.*, 631 F. Supp. 2d 242, 252 (E.D.N.Y. 2009), *aff'd sub nom. Lobur v. Parker*, 378 F. App'x 63 (2nd Cir. 2010); *In re National Life Insurance Co.*, 247 F. Supp. 486, 492 (D. Vt. 2002).

Here, mail, SMS/text, or e-mail notice can be achieved "through reasonable effort" by obtaining updated mailing address from USPS. Fed. R. Civ. P. 23(c)(2)(B). Defendant has former addresses, phone numbers, and likely also has personal email addresses (e.g., from a payroll provider).  If the Court grants this Motion, then Plaintiffs will propose specific terms for notice and will pay to have it delivered in whatever manner  the Court deems necessary and appropriate. Plfs Ex. E at ¶ 25. As this is the best practicable form and manner of notice under the circumstances, the Court should approve it.

## V.      <u>CONCLUSION</u>

WHEREFORE, Plaintiffs move for an order that certifies the proposed class, names Plaintiffs as class representatives, names Kaplan Law Firm, PLLC as class counsel, and provides all other relief that this Court sees fit.

Dated: **April 25, 2024**

### CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of April 2024, I served the foregoing document to Defendants' counsel:

***Via ECF:***
Melanie Cruthirds
mhcruthirds@liskow.com
Michael Rubenstein
mdrubenstein@liskow.com
Thomas Mcgoey, II
tjmcgoey@liskow.com
Liskow & Lewis
1001 Fannin Street, Suite 1800
Houston, Texas 77002

*/s/ Caitlin Boehne*
Caitlin Boehne