UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DIVISION

| | |
|---|---|
| **ALYSSA CORMIER, et. al.,** § | |
| *Plaintiffs* § | |
| § | |
| **v.** § | No. 1:23-cv-647-DAE |
| § | |
| **SCRIBE MEDIA, LLC, et. al.,** § | |
| *Defendants* § | |
| § | |

**<u>REPORT AND RECOMMENDATION</u>**
**<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>**

TO:   THE HONORABLE DAVID A. EZRA
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendants Enduring Ventures, Inc. ("EV"), Enduring Consulting Group LLC ("EC"), and Enduring Ventures TY Partnership LLC's ("EVP") (together, the "EV Defendants") motion to dismiss, Dkt. 27, and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the District Judge grant the EV Defendants' motion.

**I.   BACKGROUND**

Plaintiffs Alyssa Cormier, Claire Brudner, Marianna Acosta, and Esty Pittman, individually and on behalf of all others similarly situated, initiated this putative class-action lawsuit based on Defendant Scribe Media, LLC's ("Scribe") alleged violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act"). *See* Dkt. 23. Plaintiffs allege that Scribe, an Austin-based publishing company, failed to comply with the WARN Act's notice requirement when it terminated 90 of its employees on May 24, 2023. *Id.* at 4, 18.

1

Scribe, which has been experiencing financial difficulties, subsequently sought to sell the company to eliminate debts and gain investors. *Id.* at 4, 7.

According to Plaintiffs' third amended complaint, EV announced on LinkedIn in June 2023 that it had purchased Scribe. *Id.* at 8-9. Plaintiffs allege that EV created Bond Financial Technologies ("Bond"), an Austin-based company, to assume control of Scribe, but that there are "no formal barriers" between the EV Defendants and Bond: Bond's sole corporate director is EC, whose sole managing member is EV, whose sole managing member is EVP. *Id.* at 9; *see also* Dkt. 27-1, at 2. All of these organizations are run by two individuals—Francis Helgesen and Vsevolod Kozinsky—with Kozinsky having served as the interim CEO of Scribe after its sale. Dkt. 23, at 9. Plaintiffs further allege that the EV Defendants made business decisions on behalf of Scribe between June and August 2024, which required travel to Texas "for extended periods of time" and communications with individuals in Texas. *Id.* 9-12. Plaintiffs contend that the EV Defendants are alter egos of Bond based on "the interconnectedness of their finances, operations, and leadership." *Id.* at 12-13.

The EV Defendants attached an affidavit from Kozinsky to their motion to dismiss, disputing their involvement in Bond and Scribe. *See* Dkt. 27-1. Kozinsky's affidavit emphasizes that Bond alone acquired certain of Scribe's assets through a foreclosure sale agreement to which no EV Defendant was a party. Dkt. 27-1, at 2-3. Kozinsky's affidavit states that Bond, EV, EC, and EVP each hold their own corporate meetings and maintain separate records, and that none of the EV Defendants conduct

2

or oversee any of Bond's day-to-day business. *Id.* at 3-4. Moreover, Kozinsky's affidavit denies that the EV Defendants made any business decisions for or initiated any contacts in Texas on behalf of Scribe, indicating that any of "those acts would have been undertaken by Bond." *Id.* at 4-5.

Plaintiffs attached to the response in opposition to the EV Defendants' motion to dismiss an affidavit from Alyssa Cormier, a former Scribe employee and named plaintiff in this case. Dkt. 29-2. Cormier's affidavit summarizes a "virtual townhall" hosted by Kozinsky while he served as Scribe's interim CEO. *Id.* at 1-2. During this virtual townhall, Kozinsky identified himself as an owner of EV, shared EV's "future goals" for Scribe, and told listeners that he and another colleague from EV had traveled to Austin to meet with Scribe's remaining employees and learn more about the company's financial status. *Id.* at 3-4.

The EV Defendants moved to dismiss Plaintiffs' claims against them, arguing that the EV Defendants do not have sufficient contacts with Texas to be subject to personal jurisdiction in this forum. Dkt. 27. Plaintiffs filed a response arguing that they have alleged sufficient contacts between the EV Defendants and Texas for this court to exercise personal jurisdiction over them, and alternatively request jurisdictional discovery (for a second time). Dkt. 29.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(2). On such a motion, "the plaintiff bears the burden of establishing the district court's jurisdiction over the

nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The court may determine the jurisdictional issue "by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id*. But when, as here, the Court rules on the motion without an evidentiary hearing, the plaintiff need only present a *prima facie* case that personal jurisdiction is proper; proof by a preponderance of the evidence is not required. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Id*. Nevertheless, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

### III.   DISCUSSION

"A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (internal citations removed). Because the "Texas long-arm statute has been interpreted as extending to the limits of due process," "the jurisdictional analysis is collapsed into one inquiry as to whether jurisdiction comports with federal due process." *Turner v. Harvard MedTech of Nevada, LLC*, 620 F. Supp. 3d 569, 574 (W.D. Tex. 2022). Federal due process

requires the satisfaction of two elements before a federal court may properly exercise jurisdiction: "(1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Freudensprung*, 379 F.3d at 343 (internal citations removed).

The EV Defendants argue that they have insufficient contacts with Texas to be subject to general or specific personal jurisdiction in this forum. Dkt. 27, at 6-8. Plaintiffs respond that they have alleged the minimum contacts needed to establish that the EV Defendants should be subject to both general and specific jurisdiction because of the control they exercise over Bond and the contacts they cultivated in Texas. Dkt, 29, at 7-15. The undersigned will address each form of jurisdiction below.

### A.     General Jurisdiction

This court may exercise general jurisdiction over the EV Defendants if their "affiliations with [Texas] are so 'continuous and systematic' as to render them essentially at home in [Texas]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Plaintiffs invoke the single-business-enterprise and alter-ego theories to argue that this court may exercise general jurisdiction over the EV Defendants based not on the EV Defendants' contacts with Texas, but rather those of Bond, a Texas-based entity owned by EC. Dkt. 29, at 11-15. Plaintiffs argue that their uncontroverted allegations demonstrate that the EV Defendants have more control over Bond's operations than in a typical parent-subsidiary relationship. *Id.*

As a general proposition, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere presence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) (en banc) (citing 2 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 4.25[6], at 4-272 (2d ed. 1982)). However, courts have recognized that contacts of a subsidiary may be imputed to the parent corporation in cases where the subsidiary is the alter ego of the parent or where "corporations are not operated as separate entities, but integrate their resources to achieve a common business purpose." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000).[1]

To impute jurisdictional contacts from one company to another on the basis of an alter-ego relationship, a plaintiff must demonstrate that "the parent so dominates the subsidiary that 'they do not in reality constitute separate and distinct corporate entities.'" *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (quoting *Hargrave*, 710 F.2d at 1159). There are several factors to be used in

---

[1] Texas law governs the question of whether the EV Defendants and Bond are alter egos or operate as a single-business enterprise. *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586-88 (5th Cir. 2010) (applying state alter-ego law to find lack of personal jurisdiction over a non-resident); *Hargrave*, 710 F.2d at 1159 (noting that state law of the forum controls whether a defendant is amendable to service through its alter egos under a long-arm statute). While the Fifth Circuit has recognized that "district court[s] may exercise general jurisdiction over an out-of-state corporation under the single business enterprise doctrine," *Fielding*, 415 F.3d at 428, the Texas Supreme Court has "never endorsed" such a theory. However, the Texas Supreme Court *has* analyzed jurisdictional contacts under the single-business-enterprise doctrine. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173 (Tex. 2007) (noting that "we have never endorsed" the single-business-enterprise theory while finding defendant's contacts with Texas insufficient to exercise jurisdiction under such a theory (internal citations removed)).

6

evaluating whether this test is satisfied, including: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities. *Freudensprung*, 379 F.3d at 346 (citing *Hargrave*, 710 F.2d at 1160); *see also Licea v. Curacao Drydock Co., Inc.*, 952 F.3d 207, 213 (5th Cir. 2015). To pierce the corporate veil for jurisdictional purposes under a single-business-enterprise theory, courts similarly "tak[e] into account the amount of the subsidiary's stock owned by the parent corporation, the existence of separate headquarters, the observance of corporate formalities, and the degree of the parent's control over the general policy and administration of the subsidiary." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007).

Here, the factors relevant to evaluating whether the EV Defendants and Bond are alter egos or operate as a single-business enterprise weigh against finding that this Cout may exercise personal jurisdiction over the EV Defendants under either of these theories. While the EV Defendants have not disputed Plaintiffs' allegation that the EV Defendants own the "vast majority" of Bond's stock, Dkt. 23, at 12, "[a] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership" or "a duplication of some or all of the directors or officers[.]" *Licea*, 952 F.3d at 213. Plaintiffs allege that EC is the sole director or officer of Bond and that the EV Defendants, through Helgesen and Kozinsky, exercise

7

"considerable control over the general policies and daily operations of Bond." Dkt. 23, at 9, 12.

Yet the EV Defendants presented evidence—which Plaintiffs have not rebutted—that Bond has its own chief operating officer who, along with Bond's separate employees, "conduct and oversee Bond's day-to-day business operations." Dkt. 27-1, at 4 (averring that "[EC] does not control Bond's daily operations as those decisions are within the sole remit of Bond's leadership" and that EV and EVP have "neither the right nor ability to control Bond's general policies nor daily operations"); *see id.* at 5 ("EV, [EC], and [EVP] did not and do not direct Bond on how to structure its day-to-day treatment of the assets of Scribe which Bond had purchased."); *Wyatt v. Kaplan*, 686 F.2d 276, 283 n.13 (5th Cir. 1982) ("[T]he allegations of the complaint are [only] taken as true to the extent they are not contradicted by affidavits."). Moreover, Bond has a separate, Texas-based headquarters in contrast to EV and EC,[2] which are both based in California. Dkt. 27-1, at 1-2.

While Plaintiffs allege that "there are no formal barriers" between the EV Defendants and Bond because their "ownership and operations are intertwined," the EV Defendants also proffered uncontradicted evidence that the EV Defendants and Bond each hold their own corporate meetings, maintain separate corporate and financial records, keep separate bank accounts, records, and payroll systems, and file separate tax returns. Dkt. 27-1, at 3. Plaintiffs highlight the screenshots in their

---

[2] EVP was incorporated in Nevada and has no employees since "it was formed for the purpose of acquiring ownership positions in two companies that are not related to either Bond or Scribe." Dkt. 27-1, at 3.

complaint showing social-media posts naming EV as the new owner of Scribe, along with their evidence that Kozinksy offered to share EV's "future goals for Scribe" during a virtual townhall meeting with Scribe employees. Dkts. 23, at 8, 10; 29-2, at 3. While confusing, this evidence is not indicative of "any 'plus factor' that entails 'something beyond the subsidiary's mere presence within the bosom of the corporate family.'" *Licea*, 952 F.3d at 214 (quoting *PHC-Minden*, 235 S.W.3d at 176). Plaintiffs have not made a *prima facie* showing that the EV Defendants and Bond are alter egos or operate as a single-business entity such that the exercise of general jurisdiction over the EV Defendants can be maintained based on Bond's contacts with Texas.

### B.     Specific Jurisdiction

This Court may exercise specific jurisdiction over the EV Defendants if: (1) the EV Defendants have minimum contacts with the forum state, i.e., whether they purposely directed their activities toward the forum state or purposefully availed themselves of the privileges of conducting activities there; (2) Plaintiff's cause of action arises out of or results[3] from the EV Defendants' forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable. *Ward v. Rhode*, 544 F. App'x 349, 352 (5th Cir. 2013) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). The specific-jurisdiction inquiry thus "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation omitted).

---

[3] The Fifth Circuit has sometimes framed this inquiry as one into whether the "'lawsuit arises from or relates to the defendant's contact with the forum state.'" *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999))

The parties dispute whether the EV Defendants directed any of their activities towards Texas. Plaintiffs argue that the EV Defendants traveled to Texas to negotiate the sale of Scribe to Bond, which included travel to Texas "for extended periods of time" and "copious communications" with individuals based in Texas. Dkt. 29, at 8. Specifically, Plaintiffs point to allegations in their complaint that Kozinsky announced, via LinkedIn post, EV's intent to acquire Scribe and that Scribe's CEO similarly said on social media that EV covered Scribe's costs by paying salaries and author expenses. Dkts. 23, at 8, 11; 29, at 8-9. Plaintiffs presented evidence attached to their response demonstrating that Kozinsky told Scribe employees during a townhall-style Zoom that he traveled to Texas with members of the EV Defendants in June 2023 "to meet the remaining Scribe employees." Dkt. 29-2, at 3.

Yet the EV Defendants presented evidence that none of the EV Defendants traveled to Texas, but rather any such travel would have been "the conduct of Bond in its capacity as the buyer of some of Scribe's assets."[4] Dkt. 27-1, at 4-5. Given the factual disputes, the undersigned accepts Plaintiffs' evidence as true that certain members of the EV Defendants traveled to Texas in June 2023. *Kwik-Kopy Corp. v. Byers*, 37 F. App'x 90 (5th Cir. 2002) ("When alleged jurisdictional facts are disputed, all factual conflicts are resolved in favor of the party seeking to invoke the court's jurisdiction."). The undersigned declines, however, to credit Plaintiffs' allegations

---

[4] Plaintiffs respond that Kozinsky could not have possibly traveled to Texas on behalf of Bond because Bond did not exist prior to June 30, 2023, yet Plaintiffs' own evidence demonstrates that Bond was formed on May 9, 2023. Dkt. 29-1, at 2. Plaintiffs also highlight Kozinsky's use of a Scribe email address and Slack username as indicative of the EV Defendants' contacts with Texas, yet Kozinsky served as the interim CEO of Bond after it purchased Scribe. Dkt. 27-1, at 5.

that have been rebutted by evidence proffered by the EV Defendants. *Wyatt*, 686 F.2d at 283 n.13.

Plaintiffs assert that they have presented "more than enough" contacts between the EV Defendants and Texas to meet the minimum-contacts requirement—but they cite no authority to support this proposition. Dkt. 29, at 9. Even accepting the EV Defendants' alleged contacts with Texas during Bond's acquisition of Scribe—travel to Texas to learn more about Scribe—such actions are insufficient to establish specific jurisdiction because Plaintiffs have failed to allege how their WARN Act cause of action arises or results from the EV Defendants' contacts with Texas. Plaintiffs admit that their WARN Act claims do not arise out of the EV Defendants' alleged activities in Texas but insist that they sufficiently "relate to" their alleged conduct in acquiring Scribe through Bond because the "EV Defendants were interested in acquiring all of the assets of Scribe and none of its liabilities." Dkt. 29, at 11 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)).[5]

While Plaintiffs are certainly correct that no causal showing is required to establish specific jurisdiction, the Supreme Court has nonetheless recognized that "the phrase 'relate to' incorporates real limits." *Ford Motor*, 592 U.S. at 362. Here, the EV Defendants' contacts with Texas fall outside of those limits. For example, the EV Defendants' travel to Texas occurred after Scribe had already allegedly

---

[5] It bears emphasis that none of the EV Defendants were parties to the foreclosure sale agreement whereby Bond acquired certain of Scribe's assets, and the EV Defendants do not possess any of Scribe's assets. Dkt. 27-1, at 2-3.

11

terminated Plaintiffs' employment and Plaintiffs do not explain how traveling to Texas to "meet with the remaining Scribe employees" is related to Scribe's prior failure to give Plaintiffs sufficient notice of their termination, allegedly in violation of the WARN Act. At most, certain members of the EV Defendants traveled to Texas in the aftermath of Scribe's bankruptcy and ultimate sale to Bond, yet the "economic consequences or other miscellaneous fallout that can be expected to trail in the wake of a failed [] business" do not give rise to specific jurisdiction. *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753-55 (5th Cir. 1996). Plaintiffs have failed to establish a *prima facie* case that specific personal jurisdiction exists over the EV Defendants.[6]

### C.   Plaintiffs' Request for Jurisdictional Discovery

After the EV Defendants filed their motion to dismiss, Plaintiffs filed a motion for jurisdictional discovery, Dkt. 28. That motion for discovery was later rendered moot by the parties' joint advisory informing the Court that they had agreed to "some discovery relevant to the jurisdictional issues" raised by the EV Defendants' motion to dismiss. Dkt. 48. Despite the EV Defendants' agreement to provide discovery, Plaintiffs apparently declined to take any jurisdictional discovery and attached no new evidence to their response to the EV Defendants' motion to dismiss. Dkt. 30, at 11. Plaintiffs, through their response brief, now request *another* opportunity to take jurisdictional discovery should the Court be inclined to grant the EV Defendants' motion to dismiss.

---

[6] Because the EV Defendants do not have sufficient contacts with Texas to warrant the exercise of general or specific jurisdiction, the undersigned will not address whether the exercise of such jurisdiction would comport with "traditional notions of fair play and substantial justice." *Freudensprung*, 379 F.3d at 343.

Yet, as explained above, Plaintiffs have not "made even a preliminary showing of jurisdiction" to support a second opportunity to take discovery. *Fielding*, 415 F.3d at 429 (affirming denial of jurisdictional discovery where plaintiffs "ha[d] not made even a preliminary showing of jurisdiction"). Moreover, in their request Plaintiffs did not explain what they believe discovery would uncover and how those facts would support personal jurisdiction. Dkt. 29, at 17; *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (affirming denial of discovery where plaintiffs failed to "describe the discovery they contend should have been allowed, what facts they hoped to obtain from such discovery, or how it would produce information that would support specific jurisdiction"). Plaintiffs' failure to take advantage of the opportunity to take jurisdictional discovery also counsels against granting Plaintiffs' request. *See Kelly*, 213 F.3d at 855 (affirming denial of discovery where plaintiffs "did *not* take advantage of the ample opportunity to conduct discovery" (emphasis in original)). The undersigned recommends that Plaintiffs' request for jurisdictional discovery be denied.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** the EV Defendants' motion to dismiss, Dkt. 27.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to

which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED September 11, 2024.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE