IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALYSSA CORMIER, § | | |
| CLAIRE BRUDNER, § | | |
| MARIANNA ACOSTA, § | | |
| and ESTY PITTMAN, § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 1:23-cv-647-RP |
| § | | |
| SCRIBE MEDIA, LLC, § | | |
| BOND FINANCIAL TECHNOLOGIES § | | |
| HOLDINGS, LLC, § | | |
| ENDURING VENTURES, INC., § | | |
| ENDURING CONSULTING GROUP § | | |
| LLC, and ENDURING VENTURES TY § | | |
| PARTNERSHIP LLC, § | | |
| Defendants. § | | |

**DEFENDANTS' ENDURING VENTURES, INC., ENDURING CONSULTING GROUP, LLC, AND ENDURING VENTURES TY PARTNERSHIP, LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATIONS**

Defendants Enduring Ventures, Inc., Enduring Consulting Group, LLC, and Enduring Ventures TY Partnership, LLC (collectively, the "EV Parties") respectfully oppose Plaintiffs' Objections to the September 11, 2024 Report and Recommendation Regarding Certain Defendants' Motion to Dismiss, Dkt. 71, because the Magistrate Judge correctly held that this Court lacks personal jurisdiction over the EV Parties. Therefore, the Court should overrule Plaintiffs' objections and adopt the Magistrate's Report.

## BACKGROUND

Plaintiffs Alyssa Cormier, Claire Brudner, Marianna Acosta, and Esty Pittman, individually and on behalf of all others similarly situated, filed their Third Amended Complaint on December 21, 2023. *See* Dkt. 23. Plaintiffs claim they were terminated by Scribe Media, LLC ("Scribe") on May 24, 2023 without adequate notice, in violation of the WARN Act. *See* Dkt. 23

at ¶¶1–2. Plaintiffs are residents of Texas and Oklahoma, and their former employer—Scribe—is a Texas limited liability company, which operated in the Austin, Texas, area. The EV Parties are organized under the laws of Delaware and Nevada and have no employees, operations, or other business presence in Texas. *Id.* at ¶¶ 3–10. The EV Parties have always been organized and operated independently from one another and from Defendant Bond Financial Technologies Holdings, LLC ("Bond"). *Id.* at ¶ 13.

Defendant Bond purchased certain assets of Scribe approximately three months after Scribe terminated the Plaintiffs, pursuant to a Foreclosure Sale Agreement dated August 25, 2023, between Bond and Scribe's lender, American Bank of Commerce. *See* Dkt. 27-1, at ¶ 8 (Declaration of Vsevolod Kozinsky). The EV Parties are not parties to the Foreclosure Sale Agreement and did not acquire any assets of Scribe. *Id.* at ¶ 11. Neither the EV Parties nor Bond were involved in the termination decision that Plaintiffs' claim violated the WARN Act. *Id.* at ¶ 12.

Following extensive briefing on the topic, the Magistrate issued his Report and Recommendations holding that this Court lacked both general and specifical personal jurisdiction over the EV Parties and that the EV Parties Motion to Dismiss should be granted. Dkt. 67 at 13. Shortly thereafter, Plaintiffs filed their objections to the Report and Recommendations, claiming that the Magistrate erred by (1) not interpreting and crediting the undisputed facts in Plaintiffs' favor, (2) misinterpreting Plaintiffs' theory of jurisdiction over the EV Parties, and (3) new evidence produced after briefing concluded purportedly supports the exercise of jurisdiction. *See* Dkt. 71 at 10, 13, 14.

**ARGUMENT**

In their Objections, Plaintiffs misinterpret the Magistrate's rulings and the record before the Court by repeatedly conflating actions taken by Vsevolod Kozinsky and other Bond employees with those of the EV Parties. This appears to be an attempt to bolster their alter ego theory, which the Magistrate rightly rejected. In fact, it is the Plaintiffs who incorrectly identify which facts are undisputed. They claim that Bond is the alter ego of the EV Parties simply because Bond and the EV Parties conducted standard due diligence before Bond purchased significant assets in a foreclosure sale. This conflation extends to the Plaintiffs' newly submitted (and untimely) evidence—a confidentiality agreement and Letter of Intent—both of which are routine documents in any corporate merger or asset acquisition process.

### A. The Magistrate Correctly Interpreted the Undisputed Facts Demonstrating that the EV Parties Lacked Sufficient Contacts to Exercise Jurisdiction.

Plaintiffs protest that the Magistrate refused to accept the Plaintiffs' story as uncontroverted. Not so. For instance, Plaintiffs claim that the Magistrate ignored statements in pleadings and evidence related to social media posts when in fact that the Magistrate specifically addressed those posts in his report and considered them in its analysis on both jurisdictional contacts and alter ego. *See id.* at 8-9; 10. Rather than ignoring evidence as Plaintiffs' claim, the Magistrate simply did not come to the conclusions Plaintiffs' desired, explicitly stating that the Plaintiffs failed to controvert the EV Parties' *evidence* (as opposed to conclusory statements in pleadings) related to Bond's operations and the EV Parties. *See* Dkt. 67 at 8 (citing *Wyatt v. Kaplan*, 686 F.2d 276, 283 n.13 (5th Cir. 1982) ("[T]he allegations of the complaint are [only] taken as true to the extent they are not contradicted by affidavits.")).

Many of Plaintiffs' objections flow from the Magistrate's explicit acceptance of their allegations that Mr. Kozinsky traveled to Texas while serving as Bond's interim CEO to have

3

conversations with Scribe. Dkt. 71 at 10-11. Plaintiffs fail to understand how the Magistrate could have accepted that Mr. Kozinsky traveled to Texas, while not crediting their allegations that this travel was on behalf of the EV Parties (without identifying which EV party). But the allegations concerning the EV Parties were explicitly rebutted by Mr. Kozinsky's affidavit. *Id.* The Magistrate was clear on which facts were uncontroverted and which facts were established by Mr. Kozinsky's affidavit—rejecting Plaintiffs' conclusory allegations and instead finding that Mr. Kozinsky's alleged actions were on behalf of Bond while Mr. Kozinsky served as its interim CEO. *See* Dkt. 67 at 2-3; 8-9.

Plaintiffs' mistaken belief also stems from their claim that the alleged trip by Mr. Kozinsky occurred "prior to Bond's ability to conduct business in Texas," citing the June 21, 2023 date Bond stated it intended to begin transacting in Texas when registering with the Texas Secretary of State on June 30, 2023. *See* Dkt. 71 at 6, 10. Plaintiffs misapprehend both Texas law and the activities conducted by Bond. While Texas statutes do not explicitly define "conducting business", the Texas Business Organization Code specifically lays out a list of non-exclusive activities that ***do not constitute conducting business in Texas*** for purposes of requiring registration with the Texas Secretary of State, with several applying to Bond's actions in conducting due diligence prior to the purchase of certain Scribe assets:

> (2) holding a meeting of the entity's managerial officials, owners, or members or carrying on another activity concerning the entity's internal affairs;
>
> (9) transacting business in interstate commerce;
>
> (10) conducting an isolated transaction that:
>
>> (A) is completed within a period of 30 days; and
>>
>> (B) is not in the course of a number of repeated, similar transactions;

*See* TEX. BUS. ORG. CODE § 9.251(2)-(10); *see also* TEX. BUS. ORG. CODE § 9.252.

Mr. Kozinsky's affidavit makes it clear that none of the EV Parties have offices, employees, or a business presence within Texas. Dkt. 27-1 at ¶¶ 3-7, 9-10. Further, Mr. Kozinsky made clear that he served as the interim CEO of Bond while the search for a permanent CEO was conducted and the Magistrate, assuming Plaintiffs' allegations as true, correctly interpreted that Mr. Kozinsky's activities within Texas were on behalf of Bond. *Id.* at ¶¶ 18-19; *see also* Dkt. 67 at 10-11.

Plaintiffs failed to present any evidence to rebut Mr. Kozinsky's affidavit beyond conclusory allegations, such as "there are no formal barriers" between the EV Parties and Bond because their "ownership and operations are intertwined" and resting heavily on social media posts made by Mr. Kozinsky on Scribe's social media. Dkt. 67 at 8-9. Despite Plaintiffs' consistent complaints related to Mr. Kozinsky's purportedly self-serving affidavit, their own self-serving affidavit was accepted as true by the Magistrate. Plaintiffs simply have issues with the legal conclusions that the Magistrate drew from the facts.

**B. The Magistrate Correctly Held That Plaintiff Failed to Allege Sufficient Facts to Prove the EV Parties Had Sufficient Minimum Contacts in This Jurisdiction.**

Plaintiffs object that the Magistrate misunderstands Plaintiffs' theory of liability against Bond and applied the wrong legal standard to determining whether the EV Parties had minimum contacts with Texas. Dkt. 71 at 13 (objecting to holding that Plaintiffs failed to allege how their WARN claims arise out of the EV Parties contacts with Texas). It is Plaintiffs who fail to understand the jurisdictional nexus needed for this Court to exercise jurisdiction over the EV Parties.

Plaintiffs claim that the EV Parties' conduct gives rise to successor liability under the WARN Act, but the EV Parties are not the successor entity to Scribe—at most, Bond is the

purchaser of Scribe's assets, such that if there was any successor liability (and there is not), Bond would be the only potential successor. Dkt. 23 at 9. The Magistrate gave a thorough explanation of the legal standard to be applied here: Bond is a subsidiary of the EV Parties, therefore, to impute Bond's contacts to the EV Parties, Bond would have had to establish a *prima facie* case that Bond was the alter ego. *See* Dkt. 67 at 6 (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) ("contacts of a subsidiary may be imputed to the parent corporation in cases where the subsidiary is the alter ego of the parent or where "corporations are not operated as separate entities, but integrate their resources to achieve a common business purpose.")).

The Magistrate was clear that Plaintiffs failed to meet their burden as Plaintiffs presented nothing more than conclusory allegations that the EV Parties and Bond shared common corporate characteristics. Dkt. 67 at 9 (citing *Licea v. Curacao Drydock Co., Inc.*, 952 F.3d 207, 213 (5th Cir. 2015)). The Magistrate's holding was correct, as many of the factors Plaintiffs alleged as evidence of alter ego—common stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stock holders—are "not indicative of any 'plus factor' that entails 'something beyond the subsidiary's mere presence within the bosom of the corporate family.'" Dkt. 67 at 9 (quoting *Licea* 952 F.3d at 213); *see also* Dkt. 71 at 11-12. Once again, Plaintiffs merely disagree with the Magistrate's legal conclusions rather than having a valid objection that the Magistrate misinterpreted the legal standard it needed to apply.

And to the extent Plaintiffs object that the Magistrate incorrectly interpreted the law when holding that the EV Parties lacked the minimum contacts with Texas to exercise specific jurisdiction independent of successor liability, the Magistrate explicitly held that even if Plaintiffs'

6

conclusory allegations were correct that the EV Parties had traveled to Texas during the due diligence period, "such actions are insufficient to establish specific jurisdiction because Plaintiffs have failed to allege how their WARN Act cause of action arises or results from the EV Parties' contacts with Texas." Dkt. 67 at 11.

### C. Plaintiffs' Purported Newly Discovered Evidence Was Available Before the Magistrate's Decision and, Regardless, Has No Effect.

In a final attempt to craft objections, Plaintiffs cite evidence they had but never submitted in their original motion or in any supplement. Dkt. 71 at 14-15. Notably Plaintiffs themselves previously decided they had no need of jurisdictional discovery. *See* Dkt. 30 at 2-3. However, the parties did conduct limited discovery while the motion to dismiss was pending. Despite having the evidence Plaintiffs now attempt to cram into the record for months, only now do Plaintiffs present documents they easily could have put before the Court. *See* Dkt. 30 at 2-3.

Consistent with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72, the Court has the discretion to accept or reject new evidence to the extent objections refer to new evidence and arguments not presented to the Magistrate Judge. However, a party who objects to a recommendation of a magistrate judge "waives legal arguments not made in the first instance before the magistrate judge." *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) (citing *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994)). In that same vein, district courts are obliged "to review *de novo* the actual evidence on objected-to findings," but they "should not be compelled to ignore that the parties had a full and fair opportunity to present their best evidence to the magistrate judge." *Id.* One reason to reject new evidence is to assure that litigants simply do not "use the magistrate judge as a mere sounding-board for the sufficiency of the evidence." *Id.* That is precisely what is happening here. Dissatisfied with the ruling, Plaintiffs want a do-over, and

offer no reason for this Court to exercise discretion in favor of considering evidence Plaintiffs could have brought to the Magistrate Judge's attention.

What's more, the additional documents will not change the outcome. In their Objections, Plaintiffs cite to two new exhibits in support of their Objections: Exhibit A, a Letter Agreement signed on May 31, 2023 to govern the exchange of confidential information during the due diligence period for the transaction, and Exhibit B, a Letter of Intent that Enduring Ventures intended to purchase certain assets of Scribe. Dkt. 71 at 4-5. These documents fail to establish anything relevant to Magistrate's rulings on jurisdiction as both documents—a confidentiality agreement and a letter of intent—are routine documents created in the course of due diligence for a corporate transaction. *See, e.g.*, *Energy Transfer Partners, L.P. v. Enterprise Products Partners, L.P.*, 593 S.W.3d 732, 734-36 (Tex. 2020) (discussing the complex of due diligence documents—including confidentiality and letter agreements—as part of a due diligence period). Further, Plaintiffs were already aware of the existence of the Letter of Intent because it already referenced in the Plaintiff's citations to social media posts made by Mr. Kozinsky on Scribe's platform. Dkt. 29 at 8-9 (citing as evidence the social media post made by Mr. Kozinsky where he announced that EV had signed a letter of intent to acquire Scribe). Neither of these documents strengthen Plaintiffs' arguments and neither affect the validity of the Magistrate's findings that the EV Parties lack the minimum contacts necessary for this Court to exercise jurisdiction because it was Bond, not the EV Parties, that purchased certain assets of Scribe. So no matter the import of these due diligence documents, the fact of the matter is that the EV Parties did not purchase any assets of Scribe and were not involved in any decision that led to any potential WARN Act violation.

Plaintiffs also grasp at an unrelated issue, claiming that "**Bond's** CEO, Jorgenson, presented offers of settlement to putative class members that would release Bond and the EV

8

Parties' from all claims in this action" and Jorgenson stated that Bond should be able to pay the settlement amounts to putative class members although protracted litigation would potentially hinder that ability. Dkt. 71 at 15 (emphasis added). The EV Parties have already "presented evidence—which Plaintiffs have not rebutted—that Bond has its own chief operating officer who, along with Bond's separate employees, 'conduct and oversee Bond's day-to-day business operations.'" Dkt. 67 at 8 (quoting Dkt. 27-1, at 4). The relief Plaintiffs seek related to those settlement offers are not at issue in this briefing because Bond and its CEO, rather than the EV Parties are the actors alleged to have made those offers. And the Magistrate already correctly established that Bond is not the alter ego of the EV Parties such that Bonds' contacts do not flow up the corporate chain to the EV Parties. Dkt. 67 at 9. So even if considered by the District Court, Plaintiffs' purported new evidence would not be material or affect the conclusions and findings within the Magistrate's Report.

## CONCLUSION

For the foregoing reasons, the EV Parties respectfully request that this Court overrule Plaintiffs' Objections to the Magistrate's September 11, 2024 Report and Recommendation Regarding Certain Defendants' Motion to Dismiss, Dkt. 71, adopt the findings and conclusions contained within the Magistrate's Report, and grant the EV Parties' Motion to Dismiss, Dkt. 27. The EV Parties further respectfully request all other relief to which they may be entitled, whether in law or equity.

Respectfully,

**TERRAZAS PLLC**
1001 S. Capital of Texas Hwy, L250
Austin, Texas 78746
512-680-3257

By: /s/ *Kevin J. Terrazas*

>Kevin J. Terrazas
>State Bar No. 24060708
>kterrazas@terrazaspllc.com
>Eric A. Hudson
>State Bar No. 24059977
>ehudson@terrazaspllc.com\
>
>**ATTORNEYS FOR THE EV PARTIES**

## CERTIFICATE OF SERVICE

 Undersigned counsel has served this motion on all counsel of record using the court's ECF filing system, as required by the Local Rules and the Federal Rules of Civil Procedure on this 9th day of October, 2024.

>/s/ *Eric A. Hudson*
>Eric A. Hudson