# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **ALYSSA CORMIER, CLAIRE BRUDNER, ESTY PITTMAN, MARIANNA ACOSTA,** *Plaintiffs* | § § § § | |
| **v.** | § § § | **No. 1-23-CV-00647-DAE** |
| **SCRIBE MEDIA, LLC, BOND FINANCIAL TECHNOLOGIES HOLDINGS, LLC, ENDURING VENTURES, INC., ENDURING CONSULTING GROUP, LLC., ENDURING VENTURES TY PARTNERSHIP LLC,** *Defendants* | § § § § § § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE DAVID A. EZRA
     SENIOR UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiffs Alyssa Cormier, Claire Brudner, Marianna Acosta, and Esty Pittman's ("Plaintiffs") motion to certify class, Dkt. 40, and all related briefing. After reviewing these filings and the relevant case law, as well as holding a hearing, the undersigned recommends that the District Judge grant Plaintiffs' motion.

1

# I.    BACKGROUND

Plaintiffs initiated this putative class action based on Defendants[1] Scribe Media, LLC ("Scribe"), Bond Financial Technologies Holdings, LLC ("Bond"), Enduring Ventures, Inc. ("EV"), Enduring Consulting Group LLC ("EC"), and Enduring Ventures TY Partnership LLC's ("EVP")'s alleged violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, et seq. (the "WARN Act"). *See* Dkt. 23. Specifically, Plaintiffs allege that Scribe, an Austin-based publishing company, failed to comply with the WARN Act's notice requirement when it terminated 90 of its employees on May 24, 2023. *Id.* at 4, 18; Dkt. 40-1, at 2-3. Bond, an entity created by EC, later acquired certain Scribe assets and assumed control of the company through a foreclosure sale agreement. Dkts. 23, at 9, 12; 27-1, at 2. Plaintiffs moved to certify a class of individuals who were impacted by the layoff. Dkt. 40. Bond[2] filed a response in opposition. Dkt. 45.

# II.    LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). The party seeking class certification "bear[s] the burden of proof to establish that the proposed class satisfies

---

[1] The undersigned recommended that the District Judge dismiss Defendants Enduring Ventures, Inc. ("EV"), Enduring Consulting Group LLC ("EC"), and Enduring Ventures TY Partnership LLC's ("EVP," and together, the "EV Defendants") from this lawsuit for lack of personal jurisdiction. Dkt. 67.

[2] Bond is the only defendant that has filed a response to Plaintiffs' motion to certify class, as the EV Defendants continue to maintain that this Court may not exercise personal jurisdiction over them. Dkt. 45, at 1.

the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). A district court must "look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination" of the certification issues. *Id.* at 837 (citation omitted).

Federal Rule of Civil Procedure 23 governs whether a proposed class falls within this limited exception. "To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007). Rule 23(a)'s four threshold requirements are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (noting that Rule 23(a) requires "conditions commonly known as 'numerosity, commonality, typicality, and adequacy of representation'" (citation omitted)).

A plaintiff seeking certification under Rule 23(b)(3), as Plaintiffs do here, must also demonstrate that: (1) common questions predominate over any questions affecting only individual members; and (2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *see also Cruson v. Jackson Nat'l Life Ins.*, 954 F.3d 240, 252 (5th Cir. 2020). "Where the plaintiff seeks to certify a class under Rule 23(b)(3), the Rules

demand a close look at the case before it is accepted as a class action." *Cruson*, 954 F.3d at 253 (citation omitted). Ultimately, "[t]he decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)).

## III.    DISCUSSION

Plaintiffs have moved to certify a class of "[a]ll former Scribe employees throughout the United States who were terminated as a result of a 'mass layoff,' as defined by the WARN Act, without 60 days advance written notice, beginning in May 2023." Dkt. 40, at 2. Plaintiffs argue that class certification is warranted because they have satisfied the requirements of Rule 23. *See id.* Bond opposes class certification—disputing whether Plaintiffs have met the conditions established under Rule 23, challenging Plaintiffs' proposed class definition, and objecting to certain evidence presented in Plaintiffs' affidavit in support of their motion. Dkt. 45.[3]

### A.    Plaintiffs' Proposed Class Definition

Bond objects to Plaintiffs' class definition as impermissibly broad and uncertain because it "reaches beyond the date which Plaintiffs have established as their date of termination." Dkt. 45, at 12-13. Bond asks the Court to limit Plaintiffs'

---

[3] Bond objects to statements in Cormier's affidavit that are not based on her personal knowledge. Dkt. 45, at 3-5. The undersigned does not rely on any of these statements in resolving Plaintiffs' motion for class certification, and thus overrules them as moot. *See Detgen ex rel. Detgen v. Janek*, 945 F. Supp. 2d 746, 753 (N.D. Tex. 2013), *aff'd*, 752 F.3d 627 (5th Cir. 2014) ("[B]ecause the court did not find it necessary to rely on this evidence in support of its decision, these objections are overruled as moot.").

proposed class to those terminated from their employment on May 24, 2023, which Plaintiffs originally alleged as the sole date of the layoff. *Id.* at 13; Dkt. 23, at 4.

The Fifth Circuit has framed the existence of an ascertainable class of persons to be represented by the proposed class representative as an implied prerequisite of Rule 23. *See John v. National Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n. 3 (5th Cir. 2007) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.") (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). Plaintiffs allege that members of the proposed class were terminated on May 24, 2023, Dkt. 23, at 4, yet argue that because WARN Act regulations allow courts to look up to 90 days before and after Plaintiffs' terminations to determine whether rolling layoffs were part of a single "mass layoff" as defined by the WARN Act, their proposed definition is permissible. Dkt. 47, at 11 (citing 20 C.F.R. § 639.5(a)(1)(ii)).

During the hearing, Bond's witness Erica Hoffman confirmed that one additional individual was laid off in June 2023, a month after the alleged layoff date of May 24, 2023. Dkt. 72. Plaintiffs also argued that discovery from Bond has revealed that some related layoffs may have occurred before May 24, 2023.[4] *Id.*  Because the record here demonstrates that class members may have been laid off after May 24, 2023, the undersigned finds Bond's objections to the class definition, at least as to employees who were terminated after May 24, 2023, to be unfounded. In addition, the statute permits the Court consider employment losses "within any 90-day period" of

---

[4] The undersigned, however, found the one document offered by Plaintiffs at the hearing to support this contention was inadmissible. Dkt. 72.

an alleged layoff date to ascertain whether other terminations were part of the same "mass layoff," as defined under the statute, supports a class definition that is flexible as to dates. *See* 21 U.S.C. § 2102(d); *see also* 20 C.F.R. § 639.5(a)(1)(ii). To bring Plaintiffs' proposed class definition into alignment with the record and the pertinent statute, the undersigned recommends that the proposed class definition be revised to include "[a]ll former Scribe employees throughout the United States who were terminated as a result of a 'mass layoff,' as defined by the WARN Act, without 60 days advance written notice, beginning on May 24, 2023."

**B.    Rule 23(a)**

As stated above, the threshold requirements set forth in Rule 23(a) are "numerosity, commonality, typicality, and adequacy of representation." *Flecha*, 946 F.3d at 766. The undersigned will address each of these conditions below.

*1.    Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs argue that this condition is met here because their proposed class contains at least 90 individuals who were impacted by the layoff. Dkts. 40, at 9; 40-1, at 2; 72.[5] Bond responds that Plaintiffs have not identified sufficient proposed class members or offered evidence of these individuals' geographical dispersion in order to demonstrate that joinder of all potential class members is impractical. Dkt. 45, at 6-7. In assessing numerosity in the context of WARN Act claims, courts do not focus on "sheer numbers alone," but

---

[5] At the hearing, Plaintiffs argued that through discovery they now estimate the proposed class size to be around 128—Bond did not dispute this contention. *See* Dkt. 72.

instead on "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (citations omitted).

To support its argument that numerosity is not met, Bond primarily relies on two[6] cases where courts denied class certification for classes larger than the one proposed here, including a case where plaintiffs sought to certify a class in the bankruptcy context. Dkt. 45, at 6 (citing *In re Univ. Gen. Hosp. Sys., Inc.*, No. 15-31086-H3-11, 2016 WL 881312, at *4 (Bankr. S.D. Tex. Mar. 7, 2016); *Hollowell v. Orleans Reg'l Hosp., L.L.C.*, No. CIV. A. 95-4029, 1996 WL 219691, at *2 (E.D. La. Apr. 29, 1996)). Yet as Plaintiffs point out, bankruptcy proceedings involve concerns that uniquely influence the decision to certify a class in that context. Dkt. 47, at 4-5; *Univ. Gen.*, 2016 WL 881312, at *4 ("[I]t is not unusual in bankruptcy cases for large numbers of claims to be filed such that joinder is not impracticable[.]" (citing *TWL*, 712 F.3d at 895)). Even the case Bond cites outside the bankruptcy context involved a class that was ultimately certified on a motion to reconsider that attached evidence demonstrating the existence of 231 additional class members and the fact that "there

---

[6] Bond also cites *New Orleans Clerks & Checkers Union Local No. 1497 v. Ryan-Walsh, Inc.*, No. CIV.A. 93-3592, 1994 WL 72101, at *2 (E.D. La. Mar. 2, 1994), for the proposition that the "WARN Act [is] amenable to class action for groups larger than 100." Dkt. 45, at 6-7. Yet in that case, the court certified a class larger than 100 but made no reference to that number serving as the minimum required for certification, and in fact, only referenced that number in noting that WARN Act claims are "only applicable to companies which employ more than 100 employees." Dkt. 47, at 4; *New Orleans Clerks*, 1994 WL 72101, at *2 (certifying class of 140 individuals and noting that "[j]oinder of so many plaintiffs is unquestionably impracticable").

[were] potential plaintiffs who reside[d] out of town." *Hollowell*, 1996 WL 219691, at
*2.

While Bond is correct that courts have denied class certification for smaller
proposed classes, "caution should be exercised in relying on a case as a precedent
simply because it involves a class of a particular size" given the "inconsistency of
many of these cases [if] viewed solely from the perspective of the number of class
members." 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1762 (3d
ed. 2005) (collecting cases in which numerosity was satisfied with as few as 25
putative class members, but not satisfied with as many as 350 proposed members).

In fact, courts have certified classes of fewer than 90 proposed members in the
context of WARN Act claims. *See, e.g.*, *Stanley v. St. Croix Basic Servs., Inc.*, No. CIV.
2003/0055, 2008 WL 4861448 (D.V.I. Nov. 3, 2008 (finding numerosity requirement
met for proposed class of 67 individuals); *Quintero v. Mulberry Thai Silks, Inc.*, No. C
08-02294 MHP, 2008 WL 4666395, at *3 (N.D. Cal. Oct. 22, 2008) (finding numerosity
requirement satisfied where proposed class included approximately 60 individuals).
Plaintiffs have also demonstrated that the potential geographical dispersion of the
class, ease in identifying class members with the aid of discovery, nature of the
claims, and size of each individual's claim weigh in favor of certification. Specifically,
Plaintiffs alleged Scribe's workforce was mostly remote at the time of the layoff, Dkt
1, at 2, and presented declarations from two named class members who live outside
this district, Dkts. 40-3; 40-4. Testimony taken during the hearing on the motion for
class certification confirmed that most of Scribe's workforce was remote at the time

of the layoff, and that potential class members are in Texas, Arizona, California, and Nebraska. Dkt. 72.[7]

Plaintiffs have further demonstrated that WARN Act claims are "particularly amenable" to class certification, and that the small size of each class member's damages for such claims would likely preclude their ability to sue Defendants individually. Dkts. 47, at 6-7; 40-1, at 5 (declaration from named plaintiff Alyssa Cormier attesting that she "do[es] not have the resources to file a case individually on [her] own behalf"); 40-2, at 3; 40-3, at 3; 40-4, at 3; *New Orleans Clerks*, 1994 WL 72101, at *2 ("The WARN Act seems particularly amenable to class litigation." (citing *Finnan v. L.F. Rothchild & Co. 726* F. Supp. 460, 465 (S.D.N.Y. 1989))); *Easom v. US Well Servs., LLC*, No. CV H-20-2995, 2023 WL 6279359, at *9 (S.D. Tex. Sept. 26, 2023) ("The class members' individual damages [on WARN Act clams] are likely too small to make separate lawsuits economically feasible."). The undersigned finds that Plaintiffs have shown that the numerosity requirement is met.

### 2. *Commonality*

Rule 23(a) next requires that Plaintiffs establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is "met

---

[7] Bond argued at the hearing that the fact that most of Scribe's workforce was remote at the time of the layoff demonstrates that Plaintiffs will be unable to show that the layoff occurred at a "single site," as defined under the statute. Dkt. 72; 29 U.S.C.A. § 2101(a)(3)(B). While class certification "generally involves some consideration of the merits of the plaintiffs' claims," Bond cited no authority in its briefing or at the hearing to support its contention that this issue counsels in favor of denial of the motion for class certification. *Wal-Mart Stores*, 564 U.S. at 351 (noting also that the "rigorous analysis" the court must undertake in evaluating motions for class certification "will entail some overlap with the merits of the plaintiff's underlying claim").

when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997) (citation removed); *see also Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) ("The threshold of 'commonality' is not high.").

The parties agree that all the proposed class members suffered the same injury in being laid off in a way that allegedly violated the WARN Act. Dkts. 40, at 8-11; 45, at 7. Plaintiffs press that many factual and legal questions are common to the proposed class, such as: (1) whether the proposed class members were protected by the WARN Act; (2) whether the terminations were part of a "mass layoff," as defined by the statute; (3) whether the class members were "affected employees," as defined by the statute; (4) whether Defendants had to provide class members with 60-days' notice before their terminations; (5) whether Defendants failed to provide 60-days' notice before the terminations; (6) whether Defendants failed to pay class members wages and benefits for the 60-day period after the termination; and (7) determining the appropriate formulae for WARN Act damages. Dkt. 40, at 10.

Bond responds that the differences in full-time and part-time statuses of potential class members is fatal to a finding of commonality. Dkt. 45, at 7-8. Yet Bond fails to identify how the full-time or part-time[8] statuses of potential class members would impact any of the common factual and legal questions in this case and cites no authority standing for such a proposition. *Id.* To the extent Bond is suggesting that

---

[8] Testimony at the hearing revealed that only eight potential members of the class were part-time employees, and both parties agreed that this distinction only impacts the damages available to those potential class members. Dkt. 72.

there will be variation in the calculation of damages for each plaintiff, individualized damages inquiries do not preclude certification where there are other common questions or law or fact. *Gomez*, 200 F.R.D. at 584 (granting motion for certification even where "WARN damages contemplate highly individual inquiries"); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 604 (E.D. La. 2006) ("While Plaintiffs' claims will involve some individualized determinations regarding the amount of damage suffered, if any, there are enough common issues regarding Defendant's liability that class treatment would be appropriate under Rule 23.").

Because Plaintiffs have displayed how the "resolution of the common questions affect all or a substantial number of the class members," the undersigned finds that the commonality condition has been met. *Jenkins*, 782 F.2d at 472 ("Aimed in part at determining whether there is a need for combined treatment and a benefit to be derived therefrom, the rule requires only that resolution of the common questions affect all or a substantial number of the class members." (citations omitted)).

### 3.    *Typicality*

Under Rule 23(a)(3), Plaintiffs must also show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent" and is "not [a] demanding" test. *Lightbourn*, 118 F.3d at 426; *Gomez*, 200 F.R.D. at 582 ("[C]lass representatives must possess the same interest and suffer the same injury as the class members.").

Here, Plaintiffs' only legal theory is that Defendants violated the WARN Act by failing to provide Plaintiffs and potential class members with notice of their termination, such that the finding of a violation as to one plaintiff would apply with equal force to all members of the proposed class. *See* Dkt. 23; *see also Gomez*, 200 F.R.D. at 582 (finding typicality requirement met where "representatives allege only one legal theory—WARN Act liability—and do so based on one set of operative facts—the February 27, 1999, terminations coupled with a lack of timely notice."). Bond responds by once again insisting that the "individualized losses" and different part-time or full-time statuses of proposed class members demonstrates that Plaintiffs' claims are not typical of those in the proposed class. Dkts. 45, at 8-9; 45-1, at 1 (data regarding Scribe's employees at the time of the layoff "reflect that, of the employees laid off by Scribe on May 24, 2023, 8 of the 89 employees were identified as part-time employees").

Yet the cases Bond cites to support its position all found the typicality requirement to have been met even faced with the potential need for individualized damages calculations. *See, e.g.*, *Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 194 (W.D. Tex. 1998) (noting that "any factual difference concerning the specific manner in which different class members may have been injured is of no consequence" to a finding of typicality); *New Orleans Clerks*, 1994 WL 72101, at *2 ("Aside from the issue of quantum which will vary among class members according to the individuals wage scale, etc., all other issues are 'typical' to the class—that is, whether the terminated employees were covered by WARN and whether the defendant failed to

comply with the act."); *Easom*, 2023 WL 6279359, at *8 (finding typicality requirement satisfied in context of WARN Act claims where "the evidence show[ed] that [Defendant] laid off employees in all Texas locations for the same reason").

Because Plaintiffs have shown that "in the event the class members in this case were to proceed in a parallel action, they would advance legal and remedial theories similar, if not identical, to those advanced by the named plaintiffs," the undersigned finds that Plaintiffs have satisfied the typicality requirement. *Lightbourn*, 118 F.3d at 426.

### 4.  *Adequacy of representation*

Finally, Rule 23(a)(4) demands that Plaintiffs demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The rule "mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Horton v. Goose Creek ISD*, 690 F.2d 470, 484 (5th Cir. 1982). Bond does not contest Plaintiffs' counsel's "zeal and competence," Dkt. 45, at 9-10,[9] and as such, the undersigned will only address Plaintiffs' ability to serve as class representatives for the proposed class. Plaintiffs presented declarations attesting to the fact that none of them have any conflicts with the proposed class members, and

---

[9] Because Bond does not oppose Plaintiffs' counsel's request to be appointed as class counsel, and a review of the declaration provided by Kaplan Law Firm, PLLC demonstrates that they are free from conflicts, have experience in representing plaintiffs in collective and class actions, have knowledge of the applicable law, and have spent considerable time investigating the claims in this lawsuit, *see* Dkt. 40-5, the undersigned will recommend appointing Kaplan Law Firm, PLLC as class counsel. *See* Fed. R. Civ. P. 23(c)(1)(B), (g).

their counsel has confirmed that each has "helped provide information and/or made themselves available for meetings to discuss key strategic decisions." Dkts. 40-1, at 5; 40-2, at 3; 40-3, at 3; 40-4, at 4; 40-5, at 10.

Bond responds that the identical nature of Plaintiffs' statements asserting their lack of conflicts calls into question their credibility and argues that potential conflicts exist because some of the potential class members were members of teams that would have aided in the layoff and/or were later rehired by Bond. Dkts. 45, at 9-10; 45-1, at 2. Yet the declaration Bond relies on to support this point states that only 10% of the proposed class members would have been assigned to teams with "some responsibility for carrying out the layoff" and only identifies one potential class member who is currently employed by Bond. Dkt. 45-1, at 2.

While the identical nature of certain declarations by Plaintiffs may impact their weight and credibility, *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 760 (N.D. Tex. 2013), Bond has provided no evidence that the statements regarding Plaintiffs' lack of conflicts with the proposed class or support for class certification are false—especially because Plaintiffs have a sufficient "stake" in the outcome of this lawsuit to zealously pursue relief. *See Jenkins,* 782 F.2d at 472 (considering whether named plaintiffs have "an insufficient stake in the outcome" in evaluating adequate-representation requirement). Moreover, the fact that one potential class member now works for Bond and a small percentage may have had "some responsibility" for carrying out the layoffs as part of their former jobs does not present an interest so

antagonistic[10] to the class such that their representation is inadequate. *Neese v. Becerra*, 342 F.R.D. 399, 409 (N.D. Tex. 2022) ("[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003))). The undersigned finds that Plaintiffs have satisfied the adequacy requirement. The undersigned thus recommends that Plaintiffs Alyssa Cormier, Claire Brudner, Marianna Acosta, and Esty Pittman be appointed class representatives, and that Kaplan Law Firm, PLCC be appointed as class counsel.

*    *    *

The undersigned finds that Plaintiffs have satisfied Rule 23(a)'s four conditions for class certification.

### C.    Rule 23(b)(3)

Plaintiffs moved to certify their class under Rule 23(b)(3). Dkt. 40, at 15. To certify a class under this section, the court must determine that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) identifies four factors that courts should consider in evaluating whether a class should be certified under this section: (1) "the class members' interests in

---

[10] Of course, dissatisfied members will have the opportunity to "opt out" of the class if it is certified. "In any conceivable case, some of the members of the class will wish to assert their rights while others will not wish to do so." Charles Alan Wright, *Class Actions*, 47 F.R.D. 169, 174 (1970).

individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). The aim of this inquiry is to identify cases where certification "would achieve economies of time, effort and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (citation omitted).

### 1.    Predominance

Plaintiffs argue that common legal and factual issues predominate the claims of the proposed class members because their WARN Act claims "will be decided under identical legal standards and can be resolved using common evidence." Dkt. 40, at 16. Bond responds by insisting that questions as to "certain individuals' employment status, tenure, and medical damages," as well as potential conflicts within the class, preclude a finding of predominance. Dkt. 45, at 11-12. Yet once again, in the only case Bond cites in its brief[11] to support this position, the court certified a class even where

---

[11] At the hearing on the motion, Bond urged the undersigned to find that the individual damages class members might seek predominate over common questions in this case, citing *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006), to support this contention. Yet in *Steering*, the Fifth Circuit affirmed the denial of class certification in the context of a mass-tort action where "each individual plaintiff suffered different alleged periods and magnitudes of exposure [to toxic substances] and suffered different alleged symptoms as a result"; some plaintiffs alleged "both personal and property injuries, while others allege[d] only one or the other," and "many plaintiffs allege[d] as part of their claim for compensatory damages emotional and other intangible injuries." *Id.* at 602. Here, in contrast, "a reasonable figure representative of the total back pay figure can be calculated

"several aspects of WARN damages contemplate[d] highly individual inquiries," such as medical costs. *Gomez*, 200 F.R.D. at 584 ("Should any putative plaintiff have significant medical costs, he or she likely would wish to file an individual lawsuit. However, the likelihood of such a scenario actually coming about is not significant, and, given the opt-out provision of the 23(b)(3) action, is readily neutralized."). Moreover, Plaintiffs point out that damages for medical costs could be proven at trial through representative testimony, a set formula, or a multiplier to establish such damages across the class. Dkt. 72. Bond also fails to explain how any individual class member's status or tenure would affect his or her claims for relief under the WARN Act aside from the amount of damages he or she could collect if liability is established.

When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citing 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778 (3d ed. 2005)). As explained above, Plaintiffs identified many common factual and legal issues, the resolution of which will depend on identical legal standards and evidence, Section III(B)(2), and the conflicts Bond suggests may exist between class members are negligible, Section

---

without resort to individual proof," and, as the Fifth Circuit has noted, "the necessity of calculating damages on an individual basis will not necessarily preclude class certification." *Steering*, 461 F.3d at 602; *see also Gomez*, 200 F.R.D. at 584.

III(B)(4). Plaintiffs have thus satisfied the predominance requirement by demonstrating that common issues are "more prevalent or important than the non-common" issues in this case. *Bouaphakeo*, 577 U.S. at 453.

>   2.   *Superiority*

Plaintiffs contend that a class action is the best way to adjudicate the WARN Act claims against Defendants arising from the May 2023 layoffs because proposed class members are unlikely to pursue their claims individually and there are no obstacles to the management of this lawsuit as a class action. Dkt. 40, at 18-20. Bond denies that a class action is the superior method for resolving these claims, arguing that Plaintiffs have not tried to ascertain the proposed class members before moving for certification. Dkt. 45, at 11 (citing *Moore v. Int'l Filing Co. No.* 2:10-CV-0086-KS-MTP, 2010 WL 2733116, at *4 (S.D. Miss. July 8, 2010) (granting class certification under Rule 23(b)(3) where, among other things, plaintiff "indicated that he ha[d] already taken steps to ascertain potential class members")). During the hearing, however, both parties confirmed that Bond has provided Plaintiffs with discovery of Scribe's employment records—indicating that Plaintiffs' counsel have in fact taken steps to identify potential class members. Dkt. 72.

More to the point, Plaintiffs have established that proceeding as a class action is the superior way to adjudicate the WARN Act claims at issue in this lawsuit. For example, counsel for Plaintiffs declared that they are unaware of any class members that have sought to control their individual claims or initiate litigation, and the small size of each individual's claim demonstrates that class members are unlikely to

pursue their claims individually. Dkt. 40-5, at 10; *Easom*, 2023 WL 6279359, at *9. This Court is also the appropriate forum for this litigation since Scribe was based in, and Bond continues to operate in, Austin, Texas, and at least some of the proposed class members likely live in the area. Dkts. 23, at 3; 40-1, at 2; 40-2, at 2. Moreover, class adjudication of these claims will serve the interests of judicial economy and uniformity since, as already noted, the resolution of these WARN Act claims will rely on the same evidence and legal standards—and neither party has identified any obstacles to this Court's management of this lawsuit as a class action. *Amchem*, 521 U.S. 615.

*    *    *

The undersigned finds that Plaintiffs have satisfied Rule 23(a)'s four conditions for class certification, as well as Rule 23(b)(3)'s requirements that common questions predominate over individualized ones and that a class action is the superior method of resolving the WARN Act claims at issue here. The undersigned thus recommends that Plaintiffs' motion for class certification be granted.

### D.    Notice

Having found that certification of Plaintiffs' proposed class is warranted, the undersigned will address the proper means of providing notice of this lawsuit to proposed class members. Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances," which may be achieved through "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Here, Plaintiffs request that notice be provided to potential class

members through "First Class mail, postage prepaid, by SMS/text, and by electronic mail to each member of the proposed class at the member's last known contact information as shown in the Defendants' records[.]" Dkt. 40, at 20. Bond offers no objection to Plaintiffs' proposed manner of service, and courts have found the proposed forms of notice—including electronic mail and text message—to be adequate. *Defrese-Reese v. Healthy Minds, Inc.*, No. CV 18-1134, 2018 WL 6928920, at *4 (W.D. La. Dec. 19, 2018) ("Courts in the Fifth Circuit have approved the use of text message to facilitate notice to potential class members.") (collecting cases); *see also M.A. by Ashear v. NRA Grp., LLC*, No. 17-CV-7483 (NG)(RLM), 2019 WL 2357767, at *2 (E.D.N.Y. June 4, 2019) (recognizing that "primary methods of communication have evolved" to include "text messages and phone calls to cellular telephones"). The undersigned recommends that the District Judge allow notice to be provided to potential class members through Plaintiffs' proposed methods of First-Class mail, postage prepaid, SMS/text, and electronic mail.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Plaintiffs' motion to certify class, Dkt. 40, and certify a class defined as "[a]ll former Scribe employees throughout the United States who were terminated as a result of a 'mass layoff,' as defined by the WARN Act, without 60 days advance written notice, beginning on May 24, 2023." The undersigned further recommends that Plaintiffs Alyssa Cormier, Claire Brudner, Marianna Acosta, and Esty Pittman be appointed class representatives, and that

Kaplan Law Firm, PLCC be appointed as class counsel. Finally, the undersigned recommends that Plaintiffs be ordered to provide notice to potential class members through First Class mail, postage prepaid, by SMS/text, and by electronic mail.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED October 16, 2024.


DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE